564          NEBRASKA REPORTS          [Vol. 110

State, ex rel. Davis, v. Banking House of A. Castetter.

---

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. BANKING HOUSE OF A. CASTETTER, APPELLEE: PLATEAU STATE BANK, APPELLANT: JAMES E. HART, RECEIVER, APPELLEE.

FILED JUNE 27, 1923. No. 22441.

1. **Banks and Banking:** GUARANTY FUND: "DEPOSIT." Under the facts stated in the opinion, *held* that the transaction constituted a deposit within the meaning of the depositors' guaranty fund act.

2. ———: ———: ———: EXCESSIVE INTEREST. A deposit represented by a cashier's check payable at a future date, and which includes interest at a rate in excess of that allowed by law, is not within the protection of the depositors' guaranty fund act.

APPEAL from the district court for Washington county: L. B. DAY, JUDGE. *Affirmed.*

*E. B. Carrigan* and *Brogan, Ellick & Raymond,* for appellant.

*Gaines, Van Orsdel & Gaines, contra.*

Heard before MORRISSEY, C. J., ROSE and ALDRICH, JJ., COLBY and REDICK, District Judges.

REDICK, District Judge.

Application of the Plateau State Bank for payment from the state depositors' guaranty fund of the sum of $1,323.30, alleged to have been a deposit with the Banking House of A. Castetter at the time of its failure, March 4, 1921. The facts are not in dispute and may be briefly summarized as follows:

In October, 1919, the applicant held two notes of Claude Hauschildt aggregating about $1,734.52, drawing 8 per cent. interest, and was insisting upon payment, and the Castetter bank, of which Hauschildt was a customer, for the purpose of assisting him and preventing immediate enforcement of the notes, guaranteed their payment to the applicant. The amount due upon the notes was reduced by payments made by Castetter bank until, on January 15, 1921, there was a balance of $1,292.31, and interest at 8 per cent. from December 14, 1920. After the guaranty all transactions were between the two banks, and applicant looked exclusively to the Castetter bank for payment. Several letters were written by applicant to Castetter bank requesting payment as per guaranty (the notes matured July 1, 1920), and finally a payment of $500 was made March 22, 1920, which operated as an extension to December 14, 1920. December 18, 1920, applicant wrote asking payment of $500, and agreeing to carry the balance for Castetter bank a few weeks. The payment was not made and January 12, 1921, applicant wrote the following letter:

"Pursuant to our conversation of a few days ago pertaining particularly to the two notes of Claude Hauschildt for $1,485.00 and $249.52, of which there is an unpaid balance of $1,292.31, and accrued interest from December 14, 1920, we have decided to leniently observe the position of your bank inasmuch as you indicated to me that you were 'hard up,' notwithstanding the fact that you signified your intention of remitting us in full on the 14th instant in payment of the notes referred

to, and accordingly have decided to deposit the money with you until April 1st, 1921, and trust that our action in so doing will assist you somewhat in the meantime.

"We have, therefore, computed the interest on the aforesaid notes to April 1st, next, and will ask that you kindly send us your cashier's check or certificate of deposit payable on the date last hereinabove stated in full and final settlement of the two notes enumerated herein."

In response to which the Castetter bank wrote:

"Herewith cashier's check $1,323.30 payable April 1st, 1921, as per your phone of today to take up notes of Claude Hauschildt; you may indorse the notes over to us without recourse and send to us."

Receipt of the check was acknowledged "in settlement of the Claude Hauschildt notes, payment of which was assumed by yourselves," and the notes were indorsed without recourse, and, together with two chattel mortgages held as collateral security properly assigned, were delivered to Castetter bank, which held them at the time the receiver was appointed. The sum for which the cashier's check was given is made up of $1,292.31, the principal sum due upon the notes, and $30.99 interest thereon at 8 per cent. from December 14, 1920, to April 1, 1921.

The district court found that the cashier's check represented a loan and not a deposit, dismissed the application, but allowed the amount as a general claim. The correctness of this ruling is challenged by the applicant by appeal to this court.

The receiver of the Castetter bank presents two propositions to sustain the judgment: (1) That the cashier's check did not represent a deposit within the meaning of the depositors' guaranty act. (2) That, if the same was a deposit, it is not entitled to share in the guaranty fund because the Castetter bank agreed to pay interest thereon in excess of 5 per cent. per annum allowed by law.

First, was it a deposit? A depositor is "one who de-

livers to or leaves with a bank money subject to his order. These may be either time deposits or open ones subject to check." *State v. Corning State Savings Bank,* 136 Ia. 79. This definition was approved in *Farrens v. Farmers State Bank,* 101 Neb. 285. The form the transaction takes, while important, is not controlling. *State v. Corning State Savings Bank, supra.* In that case claim was upon two certificates of deposit, but it was held that the true nature of the transaction could be inquired of to determine whether or not there had been a deposit, and it was decided that one of the certificates was a deposit and the other not.

In *Estate of Law,* 144 Pa. St. 499, it was said: "A deposit is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. Whilst the relation between the depositor and his banker is that of debtor or creditor simply, the transaction cannot in any proper sense be regarded as a loan, unless the money is left, not for safe-keeping, but for a fixed period, at interest, in which case the transaction assumes all the characteristics of a loan." But while the transaction may have these "characteristics of a loan," the same features are present in every case of a time certificate of deposit, and therefore do not determine the question.

It is suggested that the fund did not constitute a deposit because no money was deposited with the Castetter bank. We think the presence of the actual money is not a prerequisite to a deposit. If I discount a note at a bank and the proceeds thereof are placed to my credit, no actual money passes, but it could not be claimed that such proceeds were not a deposit. "Speaking generally, to create a deposit, within the meaning of the statute, money *or the equivalent of money* must in intention and effect be placed in or at the command of the bank, under circumstances which do not

transgress specific limitations of the bank guaranty law."
*Fourth Nat. Bank v. Bank Commissioner,* 110 Kan.
380, 390.

In the instant case the consideration for the cashier's
check was the guaranty and assignment of the Haus-
childt notes. Whether they were of any value does
not appear with any certainty, but the Castetter bank
must have considered they were good at the time they
guaranteed their payment. The fact that the discounted
note, or the notes in question, turned out to be un-
collectable would not change the nature of the original
transaction, in the absence of fraud, as the status of
the cashier's check was fixed when issued. *Fourth Nat.
Bank v. Bank Commissioner, supra.* Suppose, instead
of guaranteeing payment of the notes, the Castetter
bank in October, 1919, had purchased the notes and is-
sued a certificate of deposit to applicant for the amount
due thereon at the time. Can it be doubted but that
the certificate represented a deposit within the protection
of the guaranty law? The legal effect of the transaction
would be the same if applicant had been credited in his
drawing account—received a cashier's check which he
deposited, or one payable at a future date which he
held. In each case the assets of the Castetter bank
were increased to the extent of the issued obligation;
it held the notes as an investment in place of the credit
to applicant.

How does the transaction in question differ in principle
from the above? It is said that the cashier's check
merely extinguished the obligation of the bank on its
guaranty, and changed its form; but this ignores the
fact that the bank received an equal amount in notes
from which to reimburse itself. "When the primary
purpose is not to establish the relation of debtor and
creditor between bank and depositor, but to discharge
some matured obligation of the bank by giving a time
certificate of deposit, the certificate is no more than
a bill payable." *Fourth Nat. Bank v. Bank Commis-*

*sioner, supra.* If a bank owes $1,000 rent and pays the same by a certificate at three months, there is no deposit but merely a change in the form of the obligation; but if the lessor holds liberty bonds in an equal amount as security for the rent, and as a part of the transaction surrenders them to the bank, the form of the obligation is alike changed, but, in addition, the certificate represents an equivalent of money, the title and control of which has passed to the bank, and therefore a deposit. It was held in *American State Bank v. Bank Commissioner*, 110 Kan. 520, that a deposit may be effected by giving a bank credit in another bank, subject to check or draft.

The parties here considered it a deposit. The applicant calls it such in his letter and asked for a cashier's check or certificate of deposit payable April 1, "in final settlement of the two notes," and the defunct bank sent the check in response. The effect is the same as if the amount had been credited to applicant's account and, instead of drawing it out, he had accepted a certificate or check payable April 1. The circumstance that he did so to accommodate the bank does not make it a loan any more than the ordinary time certificate. If a certificate at 4 per cent. is due, and depositor, at request of the bank, permits it to remain upon a certificate at 5 per cent., this would not change the deposit to a loan.

We think the true position is that, so long as the guaranty remained, it constituted a general claim against the Castetter bank, but when, by the cashier's check and transfer of the securities, the guaranty was fulfilled, the transaction constituted a deposit.

Second, is this a deposit within the protection of the guaranty fund? Considered as payment for the notes, the amount due January 15, 1921, was $1,292.31 and 8 per cent. interest from December 14, 1920, or $1,301.30. The cashier's check was for $1,323.30, which amount was arrived at by calculating interest at 8 per cent. from

January 15 to April 1, 1921. Section 306, Rev. St. 1913, reads as follows:

"No banking corporation transacting a banking business under this article shall pay interest on deposits directly or indirectly at a greater rate than five per cent. per annum. Any officer, director or employee of a bank violating the provisions of this section, directly or indirectly, shall be deemed guilty of a felony and on conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the state penitentiary not exceeding three years, or both."

Applying this section in *Iams v. Farmers State Bank*, 101 Neb. 778, we held that, where a certificate of deposit was issued at 5 per cent, but the bank agreed to pay, and paid, an additional 1 per cent. as a bonus, the transaction was a device intended to evade the provisions of the act, and did not possess that statutory characteristic of a deposit which provides for interest at only 5 per cent. per annum; and, further, that applicant was estopped from claiming protection, Dean, J., remarking: "The act creating the depositors' guaranty fund was intended by the legislature to be a shield of protection against loss to those who in good faith deposit their money in state banks in compliance with the terms of the statute. Unless its provisions are fairly construed and impartially enforced, this salutary law might become a destructive sword in the hands of unscrupulous persons having unlawful designs on the depositors' guaranty fund."

If applicant was a depositor, as we have held, then he became such on January 15, 1921, to the extent of $1,301.30, on which he was lawfully entitled to contract for not more than. 5 per cent. interest to April 1, 1921, $13.50, or a total of $1,314.80; but he demanded 8 per cent. and the bank issued its check for $1,323.30.

How may we look upon this transaction otherwise than as a violation of the statute? If a certificate

State, ex rel. Davis, v. Banking House of A. Castetter.

had been issued bearing upon its face 8 per cent. interest, no clearer evasion of the statute would be shown. The language of the act, however, covers all cases where interest in excess of 5 per cent. is paid "directly or indirectly." In *American State Bank v. Bank Commissioner, supra,* it was held: "A certificate of deposit bearing a higher rate of interest than the maximum allowed by the bank commissioner is not within the protection of the guaranty fund. And the payment by the bank of a bonus to obtain a deposit bearing such maximum is equivalent to contracting for a higher rate." Applicant attempts to distinguish *Iams v. Farmers State Bank, supra,* on the ground that there the transaction was fraudulently conceived and was a clear defiance of the statute. We are not supplied with any direct evidence as to what was in the minds of the parties in the instant case, but the principle is well established that a party is presumed to intend the natural consequences of his act and the transaction on its face carries its condemnation. To calculate interest at the illegal rate and include it in the amount called for in the certificate is as much a fraudulent device as to make the certificate regular on its face with a side agreement for a bonus.

*Morrison State Bank v. Michael,* 54 Okla. 257, is cited to the proposition that the claim should be allowed with legal interest. That case is clearly distinguishable. A question of public policy, not a positive statute was involved; the action was by the depositor against the bank; no questions such as are here presented were under consideration. The claim here is for the protection of a statute which the claimant has plainly violated; to allow it would be to recognize a contract prohibited by positive law.

The judgment is

AFFIRMED.