THE FIRST NATIONAL BANK OF ST. CLOUD, Appellant,
v. HIRNING, Supt. of Banks, et al, Respondents.

(204 N. W. 901.)

(File No. 5915.   Opinion filed August 12, 1925.)

1. **Abatement and Revival—Banks and Banking—Depositors Guaranty Fund—Action to Compel Superintendent of Banks and Depositors' Guaranty Fund Commissioner to Certify and Pay Claims Not Abated by Defendants' Resignations.**

   Cause of action to compel superintendent of banks and depositors' guaranty fund commissioners to certify and pay claims against fund survives defendants' resignations, and hence action does not abate, in view of Rev. Code 1919, Sec. 2317, but may be continued against their successors as substituted defendants.

2. **States—Actions—Superintendent of—Action to Compel Superintendent of Banks and Guaranty Fund Commissioners to Certify and Pay Claims Not Action Against State, so as to Preclude Substitution of Successors in Office as Parties Defendant.**

   Mandamus to compel superintendent of banks and depositors' guaranty fund commissioners to certify and pay claims against fund is not action against state, so as to preclude substitution of defendants' successors in office as parties defendant; the duties of such officers to pay under the circumstances prescribed being purely ministerial.

3. **Mandamus—Deputies—General Fund—Proper Remedy to Compel Superintendent of Banks to Certify Amount Necessary to Pay Good-faith Depositors in Insolvent Bank to Guaranty Fund Commission.**

   Mandamus is proper remedy to compel superintendent of banks to certify to depositors' guaranty fund commission amount necessary to pay good-faith depositors in insolvent bank, as required by Rev. Code 1919, Sec. 9020, as amended by Laws 1921, c. 134, though he may incidentally have to determine who are good-faith depositors.

4. **Banks and Banking—Certificate of Deposit—Holder of Certificate of Deposit Drawing More Than Statutory Interest Not Good-faith Depositor, Within Depositors' Guaranty Fund Act.**

   Holder of certificate of deposit drawing greater interest rate than allowed by Rev. Code 1919, Sec. 9014, as amended by Laws Sp. Sess. 1920, c. 32, is party to illegal transaction, and hence not a good-faith depositor, within section 9020, as amended by Laws 1921, c. 134, requiring superintendent of banks to certify to depositors' guaranty fund commission

27—Vol. 48, S. D.

amount necessary to pay good-faith depositors in insolvent bank.

5. **Banks and Banking—Deposit—"Check" Accepted as Consideration for Time Certificate of Deposit Equivalent to Money, and Amounts to Deposit, if Paid.**

"Check" accepted by bank as consideration for time certificate of deposit is equivalent to money, and amounts to deposit, if paid.

6. **Banks and Banking — Deposit — Deposits Guaranty Fund — One Loaning Money to Unsafe Bank in Form of Deposit, to Enable Officers to Increase Depleted Reserve, Cannot Participate in Guaranty Fund as Good-faith "Depositor."**

Under Rev. Code 1919, Secs 9010, 9013, 9020, and section 8984, as amended by Laws 1919, c. 124, one loaning money to bank with full knowledge that bank is unsafe, to enable its officers to increase depleted reserve, or for some other use of bank, and not for safe-keeping or convenience to him as depositor, though form of transaction appears as deposit, is not "depositor" entitled to participate in guaranty fund.

Appeal from Circuit Court, Hughes County; HON. JOHN F. HUGHES, Judge.

Mandamus by the First National Bank of St. Cloud against John Hirning, as Superintendent of Banks, and others as members of the State Depositors' Guaranty Fund Commission. Judgment for defendants, and plaintiff appeals. Affirmed.

*Martens & Goldsmith,* of Pierre, for Appellant.

*Sutherland, Payne & Linstad,* of Pierre, for Respondents.

(1) To point one of the opinion, Respondent cited: Secretary v. McGarrahan, 9 Wall. 298; United States v. Boutwell, 17 Wall. 604; U. S. ex rel Warden v. Chandler, 122 U. S. 643; Warner Valley Stock Co. v. Smith, 122 U. S. 28; U. S. ex rel Bernardin v. Butterworth, 169 U. S. 600; Chandler v. Dix, 194 U. S. 590; Richardson v. McChesney, 218 U. S. 487.

(2) To point two, Respondent cited: Thompson v. United States, 103 U. S. 480; Warner Valley Stock Co. v. Smith, 165 U. S. 28, 33; People v. Best, 187 N. Y. 7, 79 N. E. 890.

(3) To point three, Respondent cited: McCoy v. Handlin, 35 S. D. 487, 509; Austin v. Eddy, 41 S. D. 640; Farmers Loan & Trust Bank v. Hirning, 42 S. D. 52; Lovett v. Lankford, 47 Okl. 12, 145 Pac. 767; Lankford v. Platt, 235 U. S. 461; Wirtz v. Nestos (N. D.), 200 N. W. 524, 531.

(5) and (6)    To points five and six, Appellant cited: Fourth National Bank v. Wilson (Kan.), 204 Pac. 715, 719; Farrens v. Farmers State Bank, 163 N. W. 318; State ex rel v. Banking House of Castetter ,Neb.), 194 N. W. 784; State ex rel v. South Fork State Bank (Neb.), 200 N. W. 349; State ex rel v. Kolling (Neb.), 199 N. W. 839; Ellis v. State, 138 Wis. 513, 119 N. W. 1110; Central State Bank v. Farmers State Bank (Neb.), 162 N. W. 637; State ex rel v. Farmers State Bank (Neb.), 201 N. W. 893; State ex rel v. American Exchange Bank (Neb.), 201 N. W. 895; State ex rel v. Farmers State Bank (Neb.), 201 N. W. 899; State ex rel v. Wayne County Bank, 201 N. W. 907.

Respondent cited: Fourth National Bank v. Bank Commissioner, 110 Kan. 380, 204 Pac. 715; Iams v. Farmers State Bank, 101 Neb. 778, 165 N. W. 145; State ex rel Castetter (Neb.), 194 N. W. 784; McQuerry v. State (N. D.), 195 N. W. 432; State ex rel v. Farmers State Bank of Halsey (Neb.), 196 N. W. 908; State ex rel v. Farmers State Bank of Windside (Neb.), 201 N. W. 899; State v. Corning Savings Bank, 136 Ia. 79, 113 N. W. 500; State ex rel v. Home State Bank of Dunning (Neb.), 201 N. W. 971.

BURCH, C.    This is a mandamus proceeding against the former superintendent of banks and the former members of the depositors' guaranty fund commission of the state of South Dakota.    The defendant Hirning by resignation ceased to be superintendent of banks on January 5, 1925, and the other defendants ceased to occupy their respective positions as members of the commission on or about March 7, 1925.    The action involved six certificates of deposit issued by the Garden City State Bank, of Garden City, S. D., and the three cashier's checks issued by said bank. The Garden City State Bank suspended business on August 10, 1922, and went into the hands of the superintendent of banks for liquidation.    The appellant bank presented claims for the said certificates of deposit and cashier's checks to the superintendent of banks, and that officer approved same as common claims against the assets of the bank, but did not approve same as claims against the depositors' guaranty fund.

This mandamus proceeding was then brought to compel the superintendent of banks to recognize and certify the claims of the

appellant bank upon these certificates of deposit and cashier's checks as claims against the depositors' guaranty fund, and to compel the members of the depositors' guaranty fund commission to pay same from such fund. Fred R. Smith succeeded John Hirning, and Dean Lightner, Howard R. Kibbee, and Gilbert A. McGarraugh succeeded the other defendants as members of the commission. The plaintiff, by order to show cause issued by this court, seeks to have the above-named officers substituted as defendants.

[1] A substitution of the new officers is resisted on the ground that a proceeding in mandamus is personal against officers, and when the officer resigns the action abates. There are respectable authorities, chiefly federal, holding to this effect, while there are equally respectable authorities holding to the contrary. Section 2317, R. C., provides:

"No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue."

The Supreme Court of California, in the case of Ott Hardware Co. v. Holmberg, 36 Cal. App. 402, 179 P. 422, upon a very similar statute, held that such statute applied to mandamus. This action was prosecuted against the superintendent of banks and the depositors' guaranty fund commission in their official capacity to enforce payment of claims. There was nothing personal in the duties sought to be enforced. The plaintiff is concerned only with the payment of its claims by the officers empowered to administer the guaranty fund. Neither were the officers personally interested. The officers then in office denied the rights claimed by the plaintiff, and the officers now in office recognize the action of the old officers as binding upon them. Thus there is a legal relation between the wrong committed by the first officers and the wrong committed by their successors. This case is not within the reason for the rule holding that such actions abate, as announced by Chief Justice Taft in Gorham Mfg. Co. v. Wendell, 261 U. S. 1, 43 S. Ct. 313, 67 L. ed. 505, wherein he says:

"The inherent difficulty in all these cases is not in the liability and suability of the successor in a new suit. It is in the shifting from the personal liability of the first officer for threatened wrong

or abuse of his office to the personal liability of his successor, when there is no privity between them. * * * There is no legal relation between the wrong committed or about to be committed by the one and that by the other."

This action was not against the individuals holding the office personally, except as a means to work out the redress to which plaintiff claimed it was entitled. Plaintiff's cause of action survived the change in office, and where the office involved, as here, is a continuing one, the obligation to the plaintiff is one continuing against the office.

[2] But it is contended by the respondents that the theory upon which a substitution may be made is that the action is not personal, but against the municipality or corporate body represented by the officer, and, as the officers in this case are state officers, that upon that theory the action is against the state, and cannot be maintained against the sovereign, except by its consent, and that there is no statute permitting such action against the state. The depositors' guaranty fund is not a fund belonging to the state. It is a fund created by statute, derived from assessments of the banks operating under the law, to insure the depositors of such banks against loss. The statute specifically prescribes the use to which this fund shall be applied, and that is the payment of "depositors and holders of exchange in good faith" of insolvent banks. The application of the fund as prescribed by statute and the duties of the officers charged with enforcement of the law are purely ministerial; they have no discretion in paying out the funds, but must pay out in the manner and under the circumstances prescribed. The substitution of the new officers is allowed.

[3] The contention of respondents that mandamus is not the proper remedy is, we think, without merit. In the case of Farmers' Loan and Trust Bank v. Hirning, 42 S. D. 52, 172 N. W. 931, it is said:

"When the law requires a public officer to do a specified act in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial, and may be controlled by mandamus."

Section 9020, as amended by chapter 134, S. L. 1921, provides:

"When any bank doing business under the provisions of this chapter suspends or becomes insolvent, the superintendent of banks shall forthwith proceed to determine the amount necessary to pay the unsecured depositors and holders of exchange in good faith, in full, and cause the same to be certified to the depositors' guaranty fund commission, which shall thereupon draw against the depositors' guaranty fund on deposit in the several banks in the amount thus certified. * * * *"

Under this statute there is no discretion vested in the superintendent of banks. His duty is to determine the amount necessary to pay the "depositors and holders of exchange in good faith," and the amount is determined by computation. It is true that he may incidently have to determine who are good faith depositors but he cannot act arbitrarily in doing so. This court quoted with approval a statement of the Illinois Supreme Court in the case of People v. Brady, 268 Ill. 192, 108 N. E. 1009, referring to rights of the auditor in denying a certificate of incorporation, when the court said:

"He may not arbitrarily withhold the certificate, alleging such a reason where it does not ,in fact, exist. Such a withholding would be an act of the will only, and not of judgment, and would be such a palpable abuse of discretion as could be controlled by mandamus."

In this case it is contended by the plaintiff that it is a "depositor in good faith" under the facts admitted, and it is denied by the respondents that under the same facts plaintiff is a depositor in good faith. Thus it is seen that the question is not the exercise of discretion, but a mere difference of opinion as to what a depositor in good faith is. If, under the facts before the superintendent of banks, plaintiff is a "depositor in good faith," then to deny that depositor his rights in the guaranty fund is an arbitrary act, and the superintendent may be controlled by mandamus. If the plaintiff is not a depositor in good faith under those facts, then the said superintendent is not denying the plaintiff its legal rights, and the action must fail. It is not a question of discretion, but a question of construction of the law.

[4]  The only question remaining is whether or not the certificate and cashier's checks under the circumstances constituted a deposit within the meaning of the Depositors' Guaranty Law and are thereby protected.  For a proper understanding of this question it will be necessary to make a further statement of facts relative to the several certificates and cashier's checks.

One of the certificates, No. 5244, for $446.70, issued to George D. Hedding, had its origin in a transaction wherein the Garden City State Bank insured the lives of L. A. Pope and L. E. Pope, officers of said bank.  A note was given in satisfaction of the premium for $481.10, but, inasmuch as the officers of the bank were assisting the said Hedding in writing insurance, there was an allowance for a commission which reduced the amount due on this note to $428.91.  When the note became due Hedding presented it for payment and the plaintiff offered in settlement the said certificate of deposit drawing interest at 5 per cent.  Hedding refused to take such certificate unless the amount was increased, so that, at the maturity of the certificate, the certificate would net him 10 per cent on the amount due on the note at the time it matured.  Consequently the certificate was issued in the amount of $476.77.

Section 9014, as amended by chapter 32, Laws Sp. Sess. 1920, limits the rate of interest that may be paid upon deposits to 6 per cent, and the payment of interest in excess of that rate, either directly or indirectly, is made unlawful.  There are several Nebraska authorities cited, holding that certificates of deposit drawing a greater rate of interest than that allowed by law upon a certificate of deposit are mere loans to the bank, and not such deposits as are protected by the guaranty fund.  We think that the reasoning and holding in those cases is a correct view of the law, and that the holder of such a certificate, being a party to an illegal transaction, cannot claim that he is a holder in good faith as a depositor.  Iams v. Farmers' State Bank, 101 Neb. 778, 165 N. W. 145; State ex rel v. Castetter, 110 Neb. 564, 194 N. W. 784; McQuerry v. State (N. D.), 195 N. W. 432; State ex rel v. Farmers' State Bank of Halsey, 111 Neb. 117, 195 N. W. 908; State ex rel v. Farmers' State Bank of Winside (Neb.), 201 N. W. 899; American State Bank v. Wilson, 110 Kan. 520, 204 P. 709.  Consequently, the superintendent of banks was right in refusing to charge the foregoing certificate against the depositors' guaranty fund.

As to the other five certificates and three cashier's checks the facts are as follows: Prior to July 19, 1921, L. A. Pope was president of the Garden City State Bank. On that date he resigned, and with his family moved to St. Cloud, Minn., where on August 5, 1921, he was elected a director and vice president of the said First National Bank, plaintiff, and acted in such capacity until March 25, 1922, at which time he severed his connection with plaintiff. Shortly after becoming vice president of the plaintiff bank, L. A. Pope had transactions with the Garden City State Bank affecting the certificates and checks in dispute. On or about the 25th day of August, 1921, he received a certificate of deposit for $2,000 and paid for the same by a personal check drawn on the plaintiff bank, and thereafter sold the certificate to the plaintiff, receiving a credit to his personal account for $2,000. On the 6th day of September following the said Pope obtained in a similar manner a certificate for $2,000, a renewal of which was issued to Rose E. Pope. Two days later, on September 8, he (Pope) received in the same manner two certificates of deposit, one for $4,300 and the other for $4,500. After receiving the certificate for $4,500, Pope drew two drafts, one for $2,500 and one for $2,000 on the Garden City State Bank, and deposited these drafts to his personal account in plaintiff bank, and sent the certificate to the Garden City State Bank on September 12, 1921, to take care of the two drafts which he had drawn to his credit in plaintiff bank. These drafts were not paid, but the certificate for $4,500 was canceled and two new ones, for $2,000 and $2,500, respectively, were issued in lieu thereof. The $2,000 certificate was later renewed, and interest in the sum of $35.33 added. Thus it will be seen that all of these five certificates originated in the same manner and from similar transactions, although some are renewals.

The three cashier's checks in dispute, one for $1,500, one for $2,00, and one for $1,000, were purchased by L. A. Pope on the 21st day of November, 1921, and for each he gave his personal check on the plaintiff bank, and the cashier's checks were deposited in plaintiff bank by Pope to the credit of his personal account, and the checks which he gave were paid. The trial court denied relief to the appellant bank, and from the order denying relief appeal has been taken to this court.

By the provisions of section 9020, R. C., the "unsecured de-

positors and holders of exchange in good faith" are guaranteed under the Depositors' Guaranty Law. Under section 9013, R. C., it is provided that:

"Such guaranty shall not apply to a bank's obligations as indorser upon bills rediscounted, nor to bills payable, nor to money borrowed from its correspondents or others."

Section 9010, R. C., defines the purpose of the act to be that "of providing a depositors' guaranty fund for the protection of depositors in banks and holders of exchange." L. A. Pope while an officer of the plaintiff bank, was also interested in the Garden City State Bank; the record disclosing that he attempted to sell his interest in the bank to one Prawl, but that the deal failed of consummation, and Pope was afterwards re-elected an officer of the Garden City State Bank. The Garden City State Bank suspended business on August 10, 1922. It is apparent that said bank was in straitened circumstances at the time of the transactions and that Pope's object in dealing as he did was to aid and assist the bank, and not because he had money to deposit for safe-keeping or for his interest and convenience. In defining a deposit the Kansas court in the case of Fourth National Bank v. Bank Commissioner, 110 Kan. 380, 204 P. 715, says:

"It is necessary, in order to creat a deposit, that money or the equivalent of money shall in intention and effect be placed in or at the command of the bank, under circumstances which do not transgress specific limitations of the law."

In the body of the opinion it is said:

"Whether or not a deposit has been made depends on the nature of the transaction. * * * There is no all-inclusive and all-exclusive definition of the term 'deposit,' but the essentials are well understood."

[5] The definition given by the Kansas court has been adopted by the Nebraska court in a number of cases. State ex rel Davis, Atty. Gen., v. Farmers' State Bank of Halsey, 111 Neb. 117, 196 N. W. 908; State ex rel Davis, Atty. Gen., et al v. Kolling, 199 N. W. 839. So far as the transactions in this case are concerned, they fall within the definition above quoted, unless the last clause excludes them. A check is the equivalent of money, where accepted by the bank as the consideration for a time cer-

tificate of deposit, and amounts to a deposit if the same is paid. State ex rel Attorney General v. South Fork State Bank of Chambers, 200 N. W. 349. From the authorities cited by both appellant and respondent we find no satisfactory method for distinguishing a deposit from a loan.

[6] Under our statutes depositors and holders of exchange "in good faith" only are protected. Neither the Nebraska nor Kansas statutes contain these words. Banks are organized as financial institutions, with power to receive deposits of money. Money so received may be loaned by the bank at interest. To a very large extent deposited money forms the fund out of which loans are made and capital furnished to business. The system is a great aid to the financial operations of the country, and, although conducted by private persons or corporations, is of public importance. Checking accounts in large numbers owned by private individuals greatly increase the circulating medium through the use of checks. The size of the fund on deposit is important to a bank, because from this fund it is enabled to supply its customers with capital and derive its chief revenue. Officers in their zeal to increase this fund may solicit deposits, and the fact that a deposit was solicited does not alone determine its character as a loan. On the other hand, a depositor is not interested in the size of a bank's fund on deposit. His interest lies in the safety of his money so deposited, and the convenience to him in having an account with a solvent bank. He may prefer to do business with some men rather than others, but his chief concern is the safety of his money. The success or failure of a bank depends largely upon the integrity and business ability of the officers in charge. Sometimes a bank fails through the dishonesty of its officials; probably more often through poor business methods. Although banks are required to publish periodical statements, the statement may show resources composed of much worthless paper, and consequently the failure of a bank often resulted in the loss of the money belonging to others who were in no manner at fault. This resulted in a lack of confidence on the part of the public in general, and in many instances the loss of the lifetime savings of poor people who could ill afford to lose the money. To remedy this evil the banks were required to provide an insurance fund to protect the depositors.

Under our Code (section 8984, as amended by chapter 124, S. L. 1919) it is made unlawful for any bank "to issue its certificates of deposit for the purpose of borrowing money." It is obvious that, under the system of banking as generally practiced, any loan of money might be evidenced by a certificate of deposit, but loans to banks are by express words of the act excluded from the protection of the fund. Having in mind, therefore, the purpose in creating an insurance fund for the benefit of depositors and holders of exchange in good faith, we conclude that those only can share in the fund who are within the contemplated purpose of the act and entitled, because of their position in reference to the bank, to be insured. One who loans his money to a bank, with full knowledge that the bank is unsafe, to enable its officers to increase a depleted reserve, or for some other use of the bank, and not for his own use as a depositor, although the form of the transaction may appear as a deposit, ought not to be permitted to participate therein, upon the very obvious grounds that the insured is not acting in good faith. The law was not enacted for the protection of the bank, nor to increase its credit as a borrower.

In this case it is apparent from the entire record that Pope's object was to aid the failing Garden City State Bank; that he had no money to deposit in that bank for safe-keeping or convenience to him, the condition of which he was familiar with; and that the deposits made under such circumstances were loans to the bank, and not such deposits as are intended to be protected by the guaranty fund. It follows that the action of the superintendent of banks in refusing to allow the plaintiff's claims against the fund, and that of the circuit court in denying relief to plaintiff, was right.

The judgment of the lower court is affirmed.

GATES, J., not sitting.

Note.—Reported in 204 N. W. 901. See, Headnote (1), American Key-Numbered Digest, Abatement and Revival, 45, 1 C. J. Sec. 416; (2) States, Key-No. 191(2), 36 Cyc, 918; (3) Mandamus, Key-No. 73(1), 38 C. J. 198; (4) Banks and Banking, Key-No. 15, 7 C. J. Sec. 15; (5) Banks and Banking, Key-No. 121, 7 C. J. Sec. 15; (6) Banks and Banking, Key-No. 15, 7 C. J. Sec. 15.