#31059, #31060-vacate & dismiss-MES
**2026 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

DAVID V. WETCH,                                                        Claimant and Appellant,

    v.

MIDCONTINENT MEDIA, INC.
and CRUM & FORSTER
COMMERCIAL INSURANCE,                                Employer/Insurer and
                                                                            Appellees.

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

THE HONORABLE MARGO NORTHRUP
Judge

NATHAN R. OVIATT
G. VERNE GOODSELL
SAMUEL J. STROMMEN of
Goodsell Oviatt, LLP
Rapid City, South Dakota

                                                    Attorneys for claimant and
                                                    appellant.

THOMAS J. VON WALD of
Boyce Law Firm, LLP
Sioux Falls, South Dakota

BARTHOLOMEW L. MCLEAY
SUZANNE M. SHEHAN-AMES of
Kutak Rock LLP
Omaha, Nebraska

                                                    Attorneys for employer/insurer
                                                    and appellees.

                                                    ARGUED
                                                    FEBRUARY 10, 2026
                                                    OPINION FILED **05/27/26**

SALTER, Justice

[¶1.]     David Wetch sustained a compensable work-related injury in 1991 and received ongoing medical benefits as a result of a stipulated settlement that the Department of Labor (Department) had approved.  Wetch fell down a set of stairs at his apartment in 2010, which resulted in an increased need for medical care.  After learning of the fall years later, his original employer and its workers' compensation carrier asked the Department to review Wetch's medical payments, alleging Wetch had experienced a change in condition and that the 2010 fall—not the 1991 work-related injury—accounted for his need for treatment.  The Department agreed and concluded that Wetch's change in condition warranted termination or reduction in his workers' compensation benefits, but it did not determine which one.  The circuit court affirmed the Department, and Wetch has again appealed.

[¶2.]     Following oral argument, we ordered supplemental briefing on whether the Department's order was final.  We now conclude it was not and dismiss the appeal and vacate the circuit court's order.

## Factual and Procedural Background

[¶3.]     In July 1991, Wetch sustained a serious spinal cord injury while working for Midcontinent Media, Inc., which was enrolled for workers' compensation insurance through Crum & Forster Commercial Insurance (collectively, the Insurer).  After receiving medical treatment, including a spinal fusion operation, Wetch petitioned the Department for workers' compensation benefits.  He later entered into a stipulated agreement with the Insurer under which the parties agreed Wetch was permanently and totally disabled.  The

Department approved the agreement in 1994, and despite setbacks, Wetch's need for medical treatment abated considerably over the years that followed. In fact, between late 2006 through 2010, Wetch did not submit any claims for reimbursement of medical expenses to the Insurer.

[¶4.] Then, in 2010, Wetch fell down a set of stairs at his apartment building and sustained head and neck injuries. He did not advise the Insurer of this fall. Wetch's requests for medical benefits increased noticeably after the 2010 fall, and his related efforts to obtain them ultimately led him to file another petition with the Department in 2014.

[¶5.] The Department ordered certain medical payments for Wetch's care in a series of four partial summary judgment orders entered from 2015 to 2018. The lengthy procedural record reveals multiple efforts by Wetch seeking to enforce these orders, including contempt proceedings before a circuit court judge in 2016 and 2018, both of which were ultimately dismissed as moot after the Insurer agreed to pay medical benefits.

[¶6.] The Insurer became aware of Wetch's 2010 fall years later during the course of discovery in a bad faith civil action commenced by Wetch in federal court. But the Insurer did not, on its own volition, seek to avoid liability for the benefits paid after the 2010 fall by seeking a review under SDCL 62-7-33, which authorizes the Department to review workers' compensation payments "made or to be made" and end, diminish, increase, or award payments "if the department finds that a change in the condition of the employee warrants such action."

[¶7.] Instead, the federal district court ordered the Insurer to return to the Department and seek relief under SDCL 62-7-33 and SDCL 62-4-47, which allows workers' compensation payors to avoid liability when an employee has acted fraudulently. The district court stayed the bad faith action "until defendants obtain a final decision on Mr. Wetch's benefits from the [Department] and state courts have exercised their powers of appellate review." *Wetch v. Crum & Forster Com. Ins.*, 17-CV-5033, 2020 WL 898357, *28 (D.S.D. Feb. 25, 2020). In the district court's view, the Insurer had "been avoiding returning to the [Department] and seeking to reopen Mr. Wetch's earlier claims . . . either as fraudulent (for failing to disclose the 2010 fall) under § 62-4-47 or as neither reasonable nor necessary medical care (because of the intervening 2010 fall) under § 62-7-33." *Id.* at *27.

[¶8.] The Insurer complied by filing a March 2020 written request with the Department in the same file designated for Wetch's 2014 petition. Its request stated that it "has reason to believe the April 2010 fall, and not [Claimant's] 1991 work injury, caused a change of condition and was the cause of Claimant's need for subsequent neurosurgical treatment, physical neuromuscular deterioration, and progressive neuromuscular decline on and after April 2010." In what was essentially a prayer for relief, the Insurer concluded by "requesting the Department grant its request to review medical care/payments pursuant to SDCL 62-7-33 and for an investigation and hearing pursuant to SDCL 62-4-[4]7 and 62-4-48." For reasons that are not clear in the record, the Department subsequently assigned the Insurer's request a new 2020 file number.

[¶9.]      The Department conducted a four-day evidentiary hearing on the Insurer's written request and issued a decision and corresponding order in April 2024.  The Department determined that Wetch did not commit fraud by failing to disclose the 2010 fall, but concluded a "change in condition . . . has occurred warranting this determination by the Department that payment(s) made for the benefit of Wetch should be ended or diminished pursuant to SDCL 62-7-33."  Critically, however, the Department's order did not actually determine whether Wetch's benefits should either be ended or diminished, and if the latter, by what amount.

[¶10.]      Nevertheless, the Insurer filed a motion for vacatur in Wetch's 2014 Department file, invoking the Department's favorable (but seemingly incomplete) determination that Wetch had experienced a change in condition.  The Insurer sought to vacate the earlier partial summary judgment orders, which it described as interlocutory.  If successful in vacating the partial summary judgment orders, the Insurer further asked the Department to "dismiss with prejudice [Wetch's] petition for hearing filed on March 25, 2014."

[¶11.]      Wetch appealed the Department's April 2010 change-in-condition order to the circuit court, which entered an order staying the Insurer's pending vacatur motion and later affirmed the Department under a modified analysis.  In its memorandum decision, the court determined that the 2010 fall caused both an aggravation of Wetch's prior injuries and also caused new and distinct injuries.  The court's order stated, "the Department properly found that there is a change in condition warranting a determination by the Department that payment(s) for the

-4-

benefit of Wetch should be ended or diminished pursuant to SDCL 62-7-33." But, as with the Department's order, the circuit court did not address whether Wetch's benefits should be ended or diminished—it referenced both scenarios without selecting one.

[¶12.] In this appeal, Wetch again seeks review of the Department's change-in-condition decision, and at oral argument, we inquired about the finality of the Department's order. We subsequently ordered supplemental briefing on the following discrete question that focused on the text of SDCL 62-7-33:

> Whether the Department of Labor's April 10, 2024 Order finding the existence of a change in condition under SDCL 62-7-33 constituted a final appealable order under SDCL 1-26-30 or -30.2 even though it did not determine to what extent payments should be "ended, diminished, increased, or awarded."

[¶13.] In their supplemental briefs, both parties indicate their belief that the Department's bare change-in-condition order is final, though their reasons differ. Yet neither party offered a close examination of SDCL 62-7-33's text.

[¶14.] Wetch relates our order for supplemental briefing to the separate concept of exhausting administrative remedies. He claims the Department's order that payments should be ended or diminished "fully and finally" answered the SDCL 62-7-33 inquiry, despite the fact that the Department did not say which one—ended *or* diminished, and if the latter, by what amount.

[¶15.] Wetch also argues the Department's order is final because it is now located in a "separate [2020] worker's compensation file" and not in the 2014 file designated for his petition, but he fails to acknowledge that the Insurer's SDCL 62-7-33 request was, in fact, filed in the 2014 file before being renumbered by the

Department. In Wetch's view, "all rights, duties, and responsibilities" in the 2020 file were decided, leaving only the "computation of amounts owed—made in [the 2014 file]," which Wetch describes as "a ministerial implementation of the Department's determination on a 'change in condition.'"

[¶16.] In its supplemental brief, the Insurer initially argues that the Department's order is final principally because it was thorough. In this regard, the Insurer states Wetch "had his day in court" and points to the fact that the order "follow[ed] a weeklong hearing" at which testimony from "[m]ultiple live factual and expert witnesses and substantial other evidence [was] received," culminating in "lengthy findings of fact and conclusions of law without reserving continuing jurisdiction."

[¶17.] The Insurer also appears to argue that the Department's order effectively ended—without saying so—its obligation to pay the benefits Wetch sought in his 2014 petition and obtained in the partial summary judgment orders. Finally, the Insurer claims that the SDCL 62-4-47 fraud claim that the Department also considered as part of the SDCL 62-7-33 request provides "an alternative ground" for appellate jurisdiction, though it is unclear how. The Department's no-fraud finding was included in the same order as the change-in-condition determination and was adverse to the Insurer—not Wetch.[1]

---

1. The provisions of SDCL 62-4-47 through -48 allow the Department to continue, modify, or terminate benefits after conducting an investigation into allegations that "a worker's compensation claim has been paid under fraudulent conditions or that the injury did not arise out of or in the course of the employment." The Department found there was no fraud, and although the Insurer sought review on that issue before the circuit court, it has not

(continued . . .)

## Analysis and Decision

[¶18.] "Appellate jurisdiction can never be presumed but must affirmatively appear from the record. Thus, even when the parties fail to challenge jurisdiction, this Court will, *sua sponte,* determine" appellate jurisdiction. *Dudley v. Huizenga*, 2003 S.D. 84, ¶ 19, 667 N.W.2d 644, 650 (citation omitted). "Our jurisdiction, as a reviewing court, is limited to review of final judgments or orders, interlocutory orders by discretion of this Court, certain original proceedings and determination of questions certified by federal courts." *Homestake Mining Co. v. S.D. Subsequent Injury Fund*, 2002 S.D. 46, ¶ 33, 644 N.W.2d 612, 621 (citations omitted).

[¶19.] The Administrative Procedures Act, set out in SDCL Chapter 1-26, incorporates the requirement of finality for appellate review. "Under SDCL 1-26-30.2, any party may appeal to the circuit court in a contested case from a final decision, ruling, or action of the Department."[2] *Baier v. Dean Kurtz Const., Inc.*, 2009 S.D. 7, ¶ 14, 761 N.W.2d 601, 605 (citation modified). Further appeal "of any

---

(. . . continued)

   raised it in this appeal. The Insurer appears to argue that finality, nevertheless, exists because *Wetch* did not appeal the Department's determination that the 2010 fall at his apartment did not arise out of or in the course of employment. Our reading of the record seems to suggest that only the fraud allegation was at issue before the Department, but, regardless, it is unclear how any of the Department's fraud investigation creates finality for the separate change-in-condition decision under SDCL 62-7-33.

2.   An exception to the finality rule allows review of "[a] preliminary, procedural, or intermediate agency action or ruling . . . if review of the final agency decision would not provide an adequate remedy." SDCL 1-26-30. However, neither party has suggested this exception applies here, and we do not believe it to be implicated.

final judgment of the circuit court . . . to the Supreme Court . . . shall be taken as in other civil cases." SDCL 1-26-37.

[¶20.] At the heart of this appeal is the Insurer's request that the Department review "payments" to Wetch pursuant to SDCL 62-7-33, which provides:

> *Any payment*, including medical payments under § 62-4-1, . . . *made or to be made* under this title *may be reviewed by the Department of Labor and Regulation* pursuant to § 62-7-12 at the written request of the employer or of the employee *and on such review* payments may be *ended, diminished, increased or awarded* subject to the maximum or minimum amounts provided for in this title, *if the department finds that a change in the condition of the employee warrants such action.*

(Emphasis added.)[3]

[¶21.] "The starting point when interpreting a statute must always be the language itself." *Betty Jean Strom Tr. v. SCS Carbon Transp., LLC*, 2024 S.D. 48, ¶ 45, 11 N.W.3d 71, 88 (citation modified). "When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (citation omitted). "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *Id.* (citation omitted).

---

3. We have identified SDCL 62-7-33 in a handful of cases as the statutory means to modify an otherwise final workers' compensation award. But those decisions have limited utility here because none of them involve the actual operation of the statute. *See Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 40, 946 N.W.2d 1, 12–13 (collecting cases and noting our historical recognition that SDCL 62-7-33 is "the correct method for modifying a final Department order").

[¶22.]     Applying these rules of construction, we find that the change-in-condition statute has several sequential components. The first is a written request for review of "payments" that have already been "made" or are yet "to be made." This request prompts the Department to conduct a review pursuant to its hearing procedure. The statute allows the Department to end, diminish, increase, or award the payments under review, but only "if [it] finds that a change in the condition of the employee warrants such action." SDCL 62-7-33.

[¶23.]     We also note that the text of SDCL 62-7-33 appears to contemplate that the Department's decision to end, diminish, increase, or award payments will occur in the review proceeding itself:

> Any payment, . . . made or to be made under this title may be reviewed by the Department of Labor and Regulation . . . at the written request of the employer or of the employee and *on such review* payments may be ended, diminished, increased or awarded.

*Id.* (emphasis added).

[¶24.]     The emphasized phrase—"on such review"—provides an indication of discernible legislative intent that the Department's determinations under SDCL 62-7-33 should be made in the *same* proceeding and not in a different, later proceeding, as the parties suggest. *See City of Houston v. Hotels.com, L.P.*, 357 S.W.3d 706, 714 (Tex. App. 2011) (concluding use of the word "*such* in the phrase *of such room* indicates that the room for which consideration is paid on the occupant's behalf is the same room identified earlier in this provision as a room furnished by any hotel"); *see also Lechuga v. Tex. Employers' Ins.*, 791 S.W.2d 182, 185 (Tex. App.

1990) (explaining a statute's use of the words "such notice" demonstrated legislative intent to refer to the same *notice* appearing earlier in the statute).

[¶25.] Here, the Department's consideration of the Insurer's SDCL 62-7-33 request is unfinished, and it is difficult to see how the April 2024 order could be considered final. We have described a final appealable order as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Knecht v. Evridge*, 2020 S.D. 9, ¶ 42, 940 N.W.2d 318, 331 (citation omitted). Whatever else can be said of the Department's April 2024 order, it did not end the SDCL 62-7-33 litigation.

[¶26.] The Department has yet to undertake perhaps the most critical function of SDCL 62-7-33—the use of its statutory authority to end or change the payments based upon its threshold finding of a change in condition. The Department's order states that payments to Wetch should be ended or diminished, but it does not say which one. On its face, the order is incomplete.

[¶27.] Curiously, both parties admit as much. Each acknowledges there is more to be done, but they prefer it happen later, after we review only the change-in-condition decision. Besides the lack of any textual or practical support justifying such a delay, we see three readily apparent flaws that expose the parties' positions as unsustainable.

[¶28.] First, to accept the argument that the April 2024 order is final and that another, later order can determine whether to end or diminish payments would require us to mitotically divide the SDCL 62-7-33 inquiry so that it produced *two*

final appealable orders, instead of just one.[4] This would *endorse*—rather than discourage—piecemeal litigation. In *Smith v. Tobin*, we expressed our aversion to this sort of installment-plan litigation using clear and certain terms:

> This court has recognized that the policy underlying the finality requirement is that litigation should not proceed piecemeal. In light of this policy, we find persuasive the rationale of [*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)], restricting appellate review in order to prevent the debilitating effect on judicial administration caused by piecemeal appeal disposition of what is, in practical consequence, but a single controversy.

311 N.W.2d 209, 211 (S.D. 1981) (citation modified).[5]

[¶29.] Second, Wetch's claim that the Department's decision to either end or diminish payments is nothing more than a ministerial act seems patently incorrect. Under the traditional definition of "ministerial" expressed universally in other topical areas of the law, we have held that a ministerial duty is one "the law requires a public officer to do . . . in a specified way, . . . without regard to [their] own judgment." *Heine Farms v. Yankton Cnty. ex rel. Cnty. Comm'rs*, 2002 S.D. 88, ¶ 12, 649 N.W.2d 597, 600 (quoting *First Nat. Bank v. Hirning*, 204 N.W. 901, 903

---

4.    The Insurer's SDCL 62-7-33 request gives no indication that it envisioned a bifurcated determination. As indicated, the request appears to seek complete—not partial—relief under the statute to eliminate its obligation to Wetch. The Insurer alleged it "has reason to believe the April 2010 fall, and not [Claimant's] 1991 work injury, caused a change of condition and was the cause of Claimant's need [for payments] after April 2010." The Insurer also stated generally that it was "requesting the Department grant its request to review medical care/payments pursuant to SDCL 62-7-33."

5.    At oral argument, we asked counsel for both parties how a subsequent hearing to decide the remaining end-or-diminish issue would differ from the factual record previously before the Department, and counsel for Wetch acknowledged the testimony and evidence would be "by and large" the same as previously presented.

(S.D. 1925)). Recently, in the context of sovereign immunity, we restated the "unyielding" definition of ministerial "as absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed designated facts . . . [that] envisions direct adherence to a governing rule or standard with a compulsory result . . . [and] is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." *Est. of Sanborn v. Peterson*, 2026 S.D. 14, ¶ 20, 32 N.W.3d 684, 690 (quoting *McGee v. Spencer Quarries, Inc.*, 2023 S.D. 66, ¶ 30, 1 N.W.3d 614, 624).

[¶30.] Simply put, the text of SDCL 62-7-33 makes clear that the Department's decision to end or diminish payments is not ministerial. It may not even be mandatory to change payments in any given change-in-condition case, though it is unnecessary to make that determination here. Suffice it to say that SDCL 62-7-33 authorizes the Department to end or diminish payments if the "change in condition warrants such action." There is nothing "absolute, certain, and imperative" about this standard. *See Est. of Sanborn*, 2026 S.D. 14, ¶ 20, 32 N.W.3d at 690.

[¶31.] And, third, the Insurer's pending effort to vacate the previous payments ordered as a result of Wetch's 2014 petition is a clear and unmistakable indication that the Department's April 2024 order is not final. Whether the previous payments were part of a different file or not, the payments ordered as part of the 2014 proceeding were *the* "payments" that were the subject of the Department's SDCL 62-7-33 review. By completing the arc of the operative statutory sequence, the Department can address the Insurer's pending motion to

vacate and dismiss the 2014 petition, which would then allow review of all issues attendant to the SDCL 62-7-33 proceeding in a single appeal.[6]

[¶32.]    Indeed, that seems to be what the Insurer contemplated, at least initially.  It appealed the Department's decision to deny the motion for vacatur to the circuit court, which consolidated it with Wetch's appeal from the change-in-condition finding.  Both were appealed here and assigned different appeal numbers by the Supreme Court Clerk.  Appeal #31059 is the appeal from the change-in-condition decision, and Appeal #31060 relates to the Insurer's denied vacatur motion, though neither party developed arguments on the vacatur issue.

## Conclusion

[¶33.]    For all these reasons, we conclude that the Department's April 2024 order was not final and appealable, and we must dismiss the appeal.  Because the circuit court's appellate jurisdiction was similarly affected, we vacate the circuit court's order.  *See Skjonsberg v. Menard, Inc.*, 2019 S.D. 6, ¶ 16, 922 N.W.2d 784, 789 (reversing circuit court's judgment affirming Department's decision and remanding the case "with instructions that the court order the Department to vacate its order"); *see also United States v. Corrick*, 298 U.S. 435, 440 (1936) (expressing that an appellate court has jurisdiction for the limited "purpose of correcting the error of the lower court in entertaining the suit").

---

6.    The Insurer argues that its position is strengthened by our decision in *Call v. Benevolent & Protective Order of Elks*, 307 N.W.2d 138 (S.D. 1981), but it is not clear how.  In *Call*, we held that the Department's decision finding the employee suffered from "a partial disability of an unknown extent or degree" was *not* a final order because it "retained jurisdiction with regard to the determination of appropriate compensation."  307 N.W.2d at 139.

[¶34.]　　　　JENSEN, Chief Justice, and DEVANEY, MYREN, and GUSINSKY,

Justices, concur.