FARMERS' LOAN & TRUST BANK, Plaintiff, v. HIRNING, Defendant.

(172 N. W. 931).

(File No. 4568. Opinion filed June 17, 1919.)

1.  **Banks and Banking—Certificate of Authority, Mandamus to Enforce—Public Examiner's Certificate—Stock Selling Enter-**

prise, Shares to Officers and Directors, Security for Loan to
Bank—Excess Price of Stock Reserved to Directors—Manage-
ment in Farmers, Stock Purchasers, Promoters' False Repre-
sentations—Authority re Statute.

Where incorporators and promoters of an alleged Farmers'
Loan and Trust Bank organized it for the purpose of enabling
its incorporators to engage in an extensive and profitable stock
enterprise whose principal purpose was to obtain for original
stockholders enormous profits and commissions upon sale of
their stock to farmers, and its capital stock of $500,000 was
taken over, upon organization, and became the exclusive prop-
erty of its officers, who originally promoted its organization,
and other persons named as directors, the stock so purchased
not having been delivered to purchasers but was nearly all de-
posited in another bank as collateral to a loan from it of
$350,000 which, together with $150,000 in cash deposited by
the incorporators in said other bank, constituted the capital
stock of the trust company, such pledged stock being credited
to said corporation, showing that seven-tenths of its capital
stock consisted of such loan to the stockholders; that said in-
corporators immediately began a campaign for sale and distri-
bution of said stock to the public at $200 per share, many
shares being sold at that price, the excess $100 over par value
being retained by said promoters as profits upon such sales; and
said promoters advertised that the trust company was to be
owned, financed and controlled by the farmers of South Dakota;
it appearing that ownership and control thereof was to be re-
tained by the incorporators, whose main purpose was to realize
a profit of 100% upon such sales, leaving management to said
farmers and others; that the purchasers of the stock were in-
formed and advised that $100 of the purchase price was to be
paid into and become surplus capital of the bank and trust
company, which was untrue; held, construing Laws 1911, Ch.
255, Sec. 9 (Sec. 9039 Rev. Code 1919), providing that if, upon
examination (by Public Examiner) it appears that the trust
company is lawfully entitled to commence business, the Public
Examiner shall forthwith give to the trust company a certificate,
etc., but if he has reason to believe that the stockholders have
formed the corporation for any other than the legitimate busi-
ness contemplated by said act, he may, with advice and consent
of the Attorney General, withhold a certificate of authority—
that the Public Examiner, with advice and consent of the At-
torney General, properly refused to issue certificate of authority
to said trust company; the import of such act being that if,
upon his examination, Public Examiner becomes cognizant of
facts upon which he may reasonably found a belief that the
stockholders have formed the organization for any other pur-

pose than to themselves engage in the transaction of the business contemplated by the statutes, he may withhold a certificate, even though they have in every respect complied with precedent requirements of the statute.

2. **Same—Stockholders' Purpose Other Than Carrying on Trust Company Business—Public Examiner's Belief, Grounds.**

Upon the facts disclosed by the record, the Supreme Court cannot say the Public Examiner had no just reason to believe the original stockholders had in fact formed the corporation for a purpose other than that of carrying on a trust company business; and his finding and determination that said promoters did form the corporation for a purpose other than that contemplated by the statutes, is not without support from the facts and circumstances recited in the answer to the writ of mandamus.

3. **Mandamus—Statute Requiring Public Officer to Act Upon Facts Regardless of his Judgment, and Without Discretion—Ministerial Duty, Controlled by Mandamus—Distinguishing Quasi Judicial Decision, Mandamus to Control Decision, Whether Tenable—Administrative Duty of Public Examiner Interpreted..**

When the statute requires a public officer to do a specified act in a specified way, upon conceded facts, regardless of his judgment as to propriety of the act, and without power to exercise discretion, such duty is ministerial and controllable by mandamus; but where it requires an administrative officer to make a quasi judicial decision, viz.: the determination of a question of fact, mandamus will not lie to control such decision, nor will it reverse such decision unless it clearly appears it was so plainly without support in evidence as to amount to arbitrary abuse of such quasi judicial authority. Held, further, that Public Examiner's act in issuing certificate of authority to a trust company is peculiarly administrative, its performance is contingent upon investigation and determination of a question of fact, viz.: whether he has reason to believe the stockholders have formed a corporation for any other purpose than the legitimate business contemplated by the statute authorizing its formation.

Original proceeding in mandamus by Farmers Loan & Trust Company, a corporation, against John Hirning, as Public Examiner, and ex officio Superintendent of Banks and Trust Companies, to compel him to issue to plaintiff a certificate authorizing it to commence business as a banking and trust company. Writ denied.

*Frank R. Aikens,* and *Kirby; Kirby & Kirby,* for Plaintiff.

*Byron S. Payne,* Attorney General, and *V. R. Sickel,* Assistant Attorney General, for Defendant.

SMITH, P. J.   This is an original proceeding by mandamus to compel the defendant, as public examiner and ex officio superintendent of banks and trust companies, to issue to plaintiff corporation a certificate authorizing it to commence business at the city of Sioux Falls as a banking and trust company.

The petition for the writ alleges that since the month of November, 1918, plaintiff has been a corporation duly organized and existing under chapter 255, Laws of 1911, and acts amendatory thereof, with its principal place of business at the city of Sioux Falls; that the capital stock of said corporation consists of 5,000 shares, of the par value of $100 each; that upon the formation of the corporation all its said stock was subscribed for at the par value of $100 per share, and $500,000 from the sale of said stock was paid into and is now in the treasury of said corporation, and held by it for the purpose of transacting business under the authority of its articles of incorporation as a trust company; that plaintiff has done everything required to be done under the laws of this state to entitle it to open its doors and engage in said business, and is prepared to do everything which may be required of it by order of said public examiner under the laws of the state; that the said public examiner, after making a full investigation and examination of all the proceedings referred to, claims without right, reason, or authority that he has reason to believe, and does believe, after such examination, that the stockholders have formed said corporation for other than the legitimate business contemplated by the act authorizing its organization; and that, with the advice and consent of the Attorney General, he has announced that he will not issue to this plaintiff a certificate showing that it is lawfully entitled to commence business, and will not authorize or allow said corporation to engage in said business.

The questions involved are submitted to the court upon objections to the answer and return, and which are in effect a demurrer thereto on the ground that the facts stated in the return do not constitute a defense.   The answer admits the corporate organization and existence of plaintiff, and that defendant, as superintendent of banks and trust companies, was called upon to,

and did, make an examination into all matters pertaining to the
organization and condition of said corporation, and admits its
compliance with all the formal provisions of the law entitling it to
become a corporation and to engage in the business contemplated
by the act authorizing the incorporation of trust companies. It
is somewhat voluminous, and we shall refer only to matters con-
tained therein which we deem decisive of the right to the relief
demanded.

The answer alleges that the certificate demanded was withheld
by defendant because, at all times since his examination of the af-
fairs of said corporation, and now, he has reason to believe that
the stockholders of such corporation organized it for purposes
other than the legitimate business contemplated by the laws of
this state authorizing the organization of such corporations, and
that such certificate was and still is withheld with the advice and
consent of the Attorney General; that his investigation and ex-
amination disclose that said corporation was organized and pro-
moted for the purpose of enabling its incorporators to engage in
an extensive and profitable stock-selling enterprise, the principle
purpose being to obtain for the original stockholders enormous
profits and commissions from the sale of their original stock, espe-
cially to farmers, and that such enterprise was being carried out
at the time of his refusal to grant the certificate demanded; that
such conclusions are based upon the following facts ascertained
and disclosed by his investigation, viz.:

That the plaintiff corporation was organized with a capital
stock of $500,000, par value; that its entire capital stock, im-
mediately upon organization of the company, was taken over and
became the exclusive property of the officers of said corporation,
being the same persons who originally promoted its organization;
that the promoter named as president of the corporation took over
to himself 4,850 shares of stock, the person named as vice presi-
dent 10 shares, the person named as cashier 100 shares, the per-
son named as assistant cashier 10 shares, and other persons nam-
ed as directors of the corporation took over the remaining shares;
that the shares so purchased by the incorporators and promoters
of said corporation were not delivered to them at the time of
sale, but, with the exception of 70 or 80 shares retained by per-
sons who were to become directors, all of said stock was deposited

in the Iowa State Savings Bank, at Sioux City, Iowa, as collateral to a loan from said institution of $350,000, which, together with $150,000 in cash deposited by said incorporators in said Sioux City bank, constituted the $500,000 capital of plaintiff trust company, all of which was on deposit in said Sioux City bank to the credit of the plaintiff corporation at the time of the examination referred to, thus showing that seven-tenths of the capital of the corporation consisted of a loan of money to the stockholders secured by the stock itself or by notes; that immediately after the purchase of said stock by the incorporators they began a campaign for the sale and distribution of said stock to the public in the state of South Dakota, at the price of $200 per share, and that many shares of said stock were sold at that price; that the amount for which said capital stock was sold to the public in excess of the par value thereof has never been paid over to said trust company to form a part of its reserves, but has been retained by the said incorporators and stockholders as profits upon such sales; that said incorporators stated in advertisements in newspapers that said trust company was to be owned, financed, and controlled by the farmers of South Dakota; that it is apparent that the ownership and control of said trust company was not to be retained by the incorporators; that their main purpose in organizing such corporation was to realize a profit of 100 per cent. upon the sale of stock to the public, and leave the management of the company to the farmers of the state and others, after they had purchased the stock. It further appears, from the affidavits of persons who became purchasers of stock from the incorporators at $200 per share, that they were informed and advised, when purchasing said stock, that $100 of the purchase price was to be paid into and to become surplus capital of the banking and trust company, which was untrue; such representation being made to facilitate the sale of stock.

The authority under which the public examiner acts in such cases is found in that portion of section 9, c. 255, Laws of 1911 (section 9039, Rev. Code 1919), which reads as follows:

"If, upon examination, it appears that such trust company is lawfully entitled to commence business, the public examiner shall forthwith give to such trust company a certificate under his hand and official seal. If the said public examiner has reason to be-

lieve that the stockholders have formed the corporation for any other than the legitimate business contemplated by this act, he may with the advice and consent of the Attorney General, withhold the certificate herein mentioned."

[1]   The plain import of this statute is that if, upon his examination, the public examiner becomes cognizant of facts upon which he may reasonably found a belief that the stockholders have formed the corporation for any other purpose than to themselves engage in the transaction of the business contemplated by the statute, he may withhold his certificate, even though they have in every respect complied with the precedent requirments of the statute.   Such in fact is the holding in People v. Brady, 268 Ill. 192, 108 N. E. 1009, interpreting a statute identical, in this particular, with our own.

In that case the auditor found that a banking corporation legally organized to entitle it to engage in the banking business, and whose incorporators themselves intended to engage in that business in a suburban village about to be annexed and become a part of a larger city, in which the statute required a different capitalization, was organized for the purpose of evading the statute.   Mandamus was refused; the court holding that the auditor was justified, under the statute, in refusing the certificate of authority.   In defining the powers of the auditor under this statute, however, the court said:

"It is true that arbitrary power, to be exercised according to the whim or caprice of public officers, is inconsistent with our form of government, and any law which vests the enforcement or nonenforcement of the law in the particular case in the discretion of a public officer, unregulated by any rules or conditions, is arbitrary and invalid.   Sheldon v. Hoyne, 261 Ill. 222 [103 N. E. 1021]'.   The discretion vested in the auditor by the language quoted is not, however, such arbitrary power.   He is authorized to withhold the certificate only in case he is not satisfied as to the personal character and standing of the officers or directors elected or appointed or when he has reason to believe that the bank is organized for a purpose other than that contemplated by the act.   He may not arbitrarily withhold the certificate, alleging such a reason where it does not, in fact, exist. Such a withholding would be an act of the will, only, and not of

the judgment, and would be such a palpable abuse of discretion as could be controlled by mandamus."

[2]    Upon the facts disclosed by the record in this case, we cannot say that the public examiner had no just reason to believe that the original stockholders had in fact formed the corporation for purposes of their own other than that of carrying on a trust company business.

[3]    When the law requires a public officer to do a specified act in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial, and may be controlled by mandamus. Where the law requires an administrative officer to make a quasi judicial decision, viz. the determination of a question of fact, mandamus will not lie to control that decision, nor will it reverse such decision, unless it clearly appears that it was so plainly without support in the evidence as to amount to an arbitrary abuse of such quasi judicial authority. While the act of the public examiner in issuing the certificate of authority is purely administrative, the performance of that duty is. conditioned upon the investigation and determination of a question of fact, viz. whether he has reason to believe that the stockholders have formed the corporation for any other purpose than the legitimate business contemplated by the provisions of the statute, which authorizes the formation of an incorporated company for the purpose of carrying on the trust company business contemplated by the statute.

The finding and determination of the public examiner that the promoters of the plaintiff corporation did in fact form such corporation for a purpose other than that contemplated by the statute is not without support from the facts and circumstances recited in the answer to the writ, and which stand conceded upon the record before us.

The application for the writ must therefore be denied; and it will be so ordered.