2001 SD 25

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Carson J. QUINN, Defendant and Appellant.**

No. 21435.

Supreme Court of South Dakota.

Argued Nov. 30, 2000.

Decided Feb. 28, 2001.

Rehearing Denied April 10, 2001.

Mark Barnett, Attorney General, Timothy G. Bartlett, Ann C. Meyer, Paul E. Bachand, Assistant Attorneys General, Pierre, SD, Attorneys for plaintiff and appellee.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp, Bushnell and Carpenter, and Ronald W. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, SD, Attorneys for defendant and appellant.

SABERS, Justice

[¶ 1.] Quinn provided funeral services to indigent persons and received burial assistance payments from Pennington County. In addition to these payments, Quinn collected monies from other sources.

The State alleges the failure of Quinn to refund payment to the county after collecting additional monies from other sources constitutes theft by deception. In a court trial based on a stipulation, Quinn was found guilty of one count of theft by deception based upon implied contract. We reverse because the stipulated facts fail to prove beyond a reasonable doubt the count as charged.[1]

### FACTS

[¶ 2.] The parties entered into a stipulation of facts for the purpose of presenting this case to the trial court without a jury for a determination of guilt or acquittal. The stipulated record reveals that Quinn received indigent burial assistance payments from Pennington County for the funerals of William Leonesio and Florence Alice Horned Antelope. After conducting these funerals, Quinn submitted bills to Pennington County for his services. The bill for the Leonesio funeral was $2527.80 and the bill for the Horned Antelope funeral was $2850.00. The amount of the burial assistance payments he received for each funeral was $950. The payment request submitted to the county for the Leonesio funeral provided that additional charges would be billed separately for the grave, opening and closing the grave, and grave box.

[¶ 3.] Quinn submitted a funeral statement to Natalie Leonesio, Leonesio's wife, for $3,879.80[2] and the Oglala Sioux burial assistance program for Horned Antelope's funeral service for $1400. Quinn received payments from Natalie Leonesio of $1007.56 and $501.97. As indicated, the stipulation provides that Quinn submitted funeral statements "for monies in excess of the county burial payment and received monies over and above said amount which were not paid over to Pennington County."

[¶ 4.] Quinn acknowledged that he had received a copy of the Pennington County burial assistance guidelines. These guidelines purport to prohibit Quinn from collecting additional monies without reimbursing the county. However, these guidelines were never validly enacted by the county. Additionally, no written contract existed between Pennington County and Quinn for indigent burial services.

[¶ 5.] This stipulation was presented to the trial court for a finding of guilt or acquittal on two counts of theft by deception (SDCL 22–30A–3 and SDCL 22–30A–17(1)). The stipulation provided that the remaining fifteen counts of the indictment against Quinn would be dismissed with prejudice. Regardless of the outcome, Quinn stipulated to pay $21,610.61 as restitution to the county without same constituting an admission of guilt. Quinn was acquitted on the second count relating to the charges for the Horned Antelope funeral.

[¶ 6.] The trial court found Quinn guilty of one count of theft by deception for obtaining money from Natalie Leonesio in an amount over $500, a felony. The count alleged:

> Despite the State's argument, we are bound by these stipulated facts as the stipulation provides:
> 1. The parties stipulate that the Circuit Court may enter a finding of guilt or acquittal ... *only* based on the law and the stipulated facts set forth herein.
>
> (Emphasis added). Therefore, we are bound by the stipulation signed by the parties.

---

1. We rely solely on the facts stipulated by the parties. "This court may not base its opinion upon statements of fact offered by the plaintiffs in their brief which were not contained within the stipulated facts." *Hart v. State Farm Mut. Auto. Ins. Co.*, 248 N.W.2d 881, 883 (S.D.1976); *Beresford Ind. Sch. Dist. v. Toomey*, 65 S.D. 328, 273 N.W. 724 (1937). The stipulation is attached as Appendix 1 to this opinion for the convenience of the reader. The State's brief urges and relies upon numerous detailed facts outside the record, and, in response, Quinn urges that all such statements be stricken or ignored by this Court.

2. The disparity between the bill originally submitted to the county and the bill to Natalie Leonesio is apparently based on the inclusion of the indicated additional services.

That on or about the 14th day of May, 1997, in the County of Pennington, State of South Dakota, Carson J. Quinn did commit the public offense of theft by deception (SDCL 22–30A–3, 22–30A–17(1) in that he did create or reinforce a false impression *as to law* to obtain property of Natalie Leonesio in an amount over $500, with intent to defraud her thereof.

(Emphasis added).

[¶ 7.] Quinn appeals raising four issues:

1. Whether the Pennington County indigent burial guidelines can be used to establish any element of the offense charged.

2. Whether Quinn was improperly prosecuted for violating a county resolution which is a civil matter.

3. Whether the trial court could find and base a conviction on an implied contract with Pennington County.

4. Whether the stipulated facts are sufficient to establish theft by deception as charged beyond a reasonable doubt.

### STANDARD OF REVIEW

[¶ 8.] "The trial court made its decision based on a stipulation of facts. Therefore, we review under a de novo standard." *State v. Herrboldt*, 1999 SD 55, ¶ 5, 593 N.W.2d 805, 807. "There is no presumption in favor of the trial court's determination. It is our duty to review the evidence [permitted by the stipulation] and determine the issues involved as though presented here in the first instance." *State v. Abourezk*, 359 N.W.2d 137, 142 (S.D.1984); *see supra* note 1.

[¶ 9.] **1. WHETHER THE PENNINGTON COUNTY INDIGENT BURIAL GUIDELINES COULD BE USED TO ESTABLISH ANY ELEMENT OF THE OFFENSE CHARGED.**

[¶ 10.] SDCL 28–17–4 provides that "the county shall allow the funeral

director ... a sum to be established by resolution of the board of county commissioners in such county at their organizational meeting." A local government is only allowed to "take official action through ordinances and resolutions." *Appeal of Jackpine Gypsies Motorcycle Club*, 395 N.W.2d 593, 595 (S.D.1986). The State has stipulated that the indigent burial guidelines were never properly enacted in accord with the process established by South Dakota law. SDCL ch. 7–18A. "A county in this state is a creature of statute and has no inherent authority. It has only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted." *State v. Hansen*, 75 S.D. 476, 68 N.W.2d 480, 481 (1955) (citations omitted). Therefore, by failing to follow the proper procedure for enacting the indigent assistance guidelines, the county's actions are a legal nullity. Similarly, when a statute is unconstitutional it is void and "is to be treated as though it never existed." *Weegar v. Bakeberg*, 527 N.W.2d 676, 678 (S.D. 1995).

[¶ 11.] Nevertheless, the State asserts that Quinn's admission that he had been fully informed of the guidelines is sufficient to establish specific intent to violate our theft by deception statutes. Those guidelines require Quinn to reimburse the county for monies recovered from third parties and that no other agreements for any purpose be established. The State asserts that Quinn's awareness of these guidelines create an "implied contract" binding him to the guidelines, thereby constituting theft by deception when he failed to refund the payment to the county. We are not convinced by this argument.

[¶ 12.] "The obligation or duty of a county to relieve and support the poor and indigent is purely statutory." *Hamlin County v. Clark County*, 1 S.D. 131, 45 N.W. 329, 331 (1890); *see also Roane v. Hutchinson County*, 40 S.D. 297, 167 N.W. 168, 168 (1918). By failing to follow statutory procedure for enacting a valid resolu-

tion, these guidelines do not create an obligation. "[A] void ordinance confers no rights and imposes no obligations as an invalid ordinance does not furnish any more authority or support than an unconstitutional statute." 62 CJS Municipal Corporations § 309 at 455 (1999). Therefore, the guidelines did not prohibit Quinn from collecting the reasonable value of his services from the decedent's family or estate.

[¶ 13.] We hold that the invalid indigent assistance guidelines cannot support a conviction, as those guidelines are a legal nullity.

[¶ 14.] **2. WHETHER QUINN WAS IMPROPERLY PROSECUTED FOR VIOLATING A COUNTY ORDINANCE.**

[¶ 15.] In his brief, Quinn maintains that "the issue is whether [Quinn] is, in fact, being prosecuted for violating the guidelines. In light of our disposition of issue 1, it is clear the guidelines were invalid and cannot support any element of the crime charged. This prosecution arises from his actions of obtaining money through an alleged act of deception. Conduct to obtain money by deception is not exclusively a civil matter. SDCL 22–30A–3, 22–30A–17(1). Issues of civil liability are peripheral to this matter and we do not address them here. At any rate, Quinn cannot be prosecuted, directly or indirectly, for violating the indigent assistance guidelines.

[¶ 16.] **3. WHETHER THE TRIAL COURT COULD FIND AND BASE A CONVICTION ON AN IMPLIED CONTRACT WITH PENNINGTON COUNTY.**

[¶ 17.] We do not address issue 3 as we have disposed of it in issue 1. The invalidly enacted ordinance is void and cannot form the basis for an implied contract. Additionally, the stipulated facts are insufficient to support any implied contract, as they merely indicate Quinn received a copy

of the guidelines and do not detail any further actions between the parties.

[¶ 18.] Therefore, we turn directly to the focus of this appeal.

[¶ 19.] **4. WHETHER THE STIPULATED FACTS ARE SUFFICIENT TO SUPPORT A CONVICTION FOR THEFT BY DECEPTION.**

[¶ 20.] Quinn was charged with violating SDCL 22–30A–3, which provides in relevant part:

Any person who obtains property of another by deception is guilty of theft. A person deceives if with intent to defraud he:

1. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind.

2. Fails to correct a false impression which the deceiver previously created or reinforced.

Quinn was charged in connection with SDCL 22–30A–17, which classifies a theft over $500 as grand theft.

[¶ 21.] Quinn urges this Court to hold that his actions would merely constitute a breach of contract but not theft by deception. This is somewhat similar to the argument advanced by the defendants in *State v. Hurst*, where the defendants asserted that their actions only constituted a breach of contract when they collected money in exchange for a promise to incinerate medical waste which they instead buried. 507 N.W.2d 918, 919 (S.D.1993). We rejected this position in *Hurst*. "The statute requires an act of deception to obtain another's property. The statute goes on to require 'intent' and states that such 'intent to defraud' exists if a person 'creates or reinforces a false impression.'" *State v. Dale*, 439 N.W.2d 98, 107 (S.D. 1989). For a conviction under the statute "the actor must have a purpose to deceive." *Hurst*, 507 N.W.2d at 920.

[¶ 22.] Quinn puts much emphasis on the fact that the total amount he recovered from Leonesio did not exceed a reasonable amount for funeral expenses. "A matter can have 'pecuniary significance' [under SDCL 22–30A–3] without resulting financial loss." *Id.* at 922. There is no requirement that the victim suffer a pecuniary loss to establish theft by deception. *Id.* This argument "focuses on the wrong part of the transaction. They direct attention to what the victim obtains. The gist of the offense, however, is concerned with what the defrauder obtains. Once the victim has parted with property in reliance on a false representation, it is immaterial whether [the exchange was equal]." *Id.* (Citations omitted).

[¶ 23.] The record establishes that Quinn submitted a bill for $2527.80 to the county for the funeral of Leonesio, received $950 in return and then submitted a bill to the decedent's wife for $3,879.80 without mention of the $950 paid to him by the county. Quinn was able to recover payments from Natalie Leonesio of $1,007.56 and $501.97, arguably in reliance in part on his billing statement.

[¶ 24.] Although this billing statement may create civil and possibly other criminal liability, the stipulated facts fail to prove beyond a reasonable doubt the *count as charged*, that Quinn did "create or reinforce a false impression *as to law* to obtain property of Natalie Leonesio in an amount over $500, with intent to defraud her thereof." (Emphasis added). Given the fact that the indigent burial guidelines did not constitute a validly enacted law, there is nothing in the stipulated facts to support a finding that Quinn misled Natalie Leonesio and created a false impression *as to law*.

[¶ 25.] The indictment must provide notice of the crime charged and the elements of the offense. *State v. Hoeft*, 1999 SD 24, ¶ 21, 594 N.W.2d 323, 327. While "an indictment is generally sufficient if it employs the language of the statute," that is not the case here. *Id.* The prosecutor in this case focused exclusively on theft by deception perpetrated by misrepresenting the law. The State fails to cite to any law requiring the refund of the $950 to the county, or that said amount must be shown in the statement to the debtor.[3] The count did not allege additional instances, based on either fact or statute, in which theft by deception could be proven. For example, if the State could prove Quinn received funds in excess of the $3,879.80 claimed, or, in excess of the reasonable value of his services, then he may have been subject to criminal or civil liability. Therefore, as this element of the crime charged (false impression as to law) is unsupported by the stipulated facts, the evidence is insufficient and we reverse Quinn's conviction for theft by deception.

[¶ 26.] Reversed.

[¶ 27.] AMUNDSON and KONENKAMP, Justices, concur.

[¶ 28.] GILBERTSON, Justice, concurs with a writing.

[¶ 29.] MILLER, Chief Justice, concurs specially.

GILBERTSON, Justice (concurring).

[¶ 30.] The genesis of this case grows out of the providing of funeral services by Quinn. Unlike many other trades and services, this is now considered a profession subject to substantial licensing and regulation by the State of South Dakota. *See generally* SDCL chapter 36–19. Born of

3. *In the Matter of Discipline of Rensch*, 333 N.W.2d 713, 716, we held that attorney Rensch "thwarted the statutes designed to insure that assets of defendants represented by court appointed counsel are available to reimburse the counties for the expense of such representation." As a result, Mr. Rensch was publicly censured by this Court. However, that decision was based on the Code of Professional Ethics. We have not been directed to, nor are we able to find, any authority that makes the conduct of Quinn, based on the stipulated facts, a violation of the laws of South Dakota.

necessity in our frontier days, the profession has clearly evolved over the years to its current position in our society. In so doing, it has shed any claim of a right to *caveat emptor* or doing what the market will bear.

[¶ 31.] SDCL 36–19–38 prohibits the following conduct by a person licensed to practice funeral service:

(4) [N]ot a person of good moral character;

(5) Shall be guilty of gross or willful malpractice in the business of funeral service or funeral directing;

(6) Shall be guilty of willful violation of any section of this chapter, or any rule or regulation of the board, or any rule or regulation of the state or any municipal board ... governing the disposition ... of dead human bodies....

SDCL 36–19–41 declares a violation of any provision of SDCL chapter 36–19 to be a class 2 misdemeanor.

[¶ 32.] Nevertheless, for reasons including the failure to legally enact "guidelines," acts of prosecutorial discretion, stipulated facts precluding consideration of the most egregious acts, trial tactics and admissions by counsel, we do not sit in direct judgment on the actions of Quinn against an elderly widow and the taxpayers of Pennington County. Instead, we are limited to the very narrow issue addressed today by the Court. The opinion of the Court within these legal limits correctly decides that narrow issue.

[¶ 33.] However, this is hardly a vindication of the actions of Quinn. As noted by the Court today, in the future he may well be called to answer for his acts in civil, criminal or administrative tribunals. Today I can only look at the entire factual record, shake my head and sympathize with the writing of the Chief Justice.

MILLER, Chief Justice (concurring specially).

[¶ 34.] Although I concur with the majority, I feel compelled to write specially to point out the despicable conduct of the Defendant and to emphasize the unfortunate tactical decisions by the prosecution.

[¶ 35.] Quinn was aware of Pennington County's indigent burial guidelines. He indicated his agreement to follow them by accepting the $950 fee. Then, after receiving payment from the county, Quinn improperly proceeded to attempt to collect the *full* burial fee from the poor, elderly, indigent widow. The bill Quinn sent to her was especially misleading because it did not give credit for or even indicate that he had already received $950 from Pennington County!

[¶ 36.] The record of a pre-trial hearing, and the sentencing hearing, tell us some other damning evidence that I simply cannot ignore (although for some strange reason the prosecution failed or neglected to include it in the stipulation of facts). Incredibly, sometime after the burial, and even after Quinn received the county payment, he became aware of the fact that the widow had inadvertently found money from her deceased husband's carpenter's union, which she intended to use to reimburse the county for its payment of the funeral expenses. However, before she could do so, Quinn confronted her and told her that if the county discovered she had the money she would go to jail. He further told her that if she did not use the extra funds to pay *him* she would be "going to prison." What a guy! Shame on you Mr. Quinn! What reputable person would use such misrepresentations to threaten an elderly, recently widowed, lady with prison? One can surely understand then, why this poor widow paid Quinn over $1,500 without knowing she had no obligation to do so. This reprehensible "business" practice, sounding like something out of a Dickens novel, is contemptible and outrageous and should be recognized as such.

[¶ 37.] Quinn used his business relationship with a grieving widow to compound an already difficult and painful situ-

ation. I suggest it was pure greed. His conduct in preying on the emotional situation of this poor woman, who had recently lost her husband to Alzheimer's disease, compels me to write specially.

[¶ 38.] In addition to Quinn's despicable conduct, I also write to note the prosecution's unusual handling of the case. It is incomprehensible to me why the prosecutor failed to include the conduct described above in the stipulated facts as support for the theft by deception charge.

[¶ 39.] Then, at oral argument, State's counsel made the unusual admission that the entire criminal case rested on the validity of the guidelines. I am not so willing to agree to that position, but such a concession is binding on the state.

[¶ 40.] What an unfortunate situation is presented to us. The county did not properly formalize its guidelines and prosecutorial authorities seemingly made significant errors of judgment. Thus, the law mandates that we may not affirm the conviction and the punishment Quinn so obviously deserves. However, we are a court of law and follow the law we must. It is most difficult when presented with this defendant's obvious greed and his willingness to misrepresent the truth for his own personal financial gain.

## APPENDIX 1

STATE OF SOUTH DAKOTA

COUNTY OF PENNINGTON

STATE OF SOUTH DAKOTA

Plaintiff,

vs.

CARSON J. QUINN,

Defendant.

IN CIRCUIT COURT

SEVENTH JUDICIAL CIRCUIT

Crim. Nos. 98–4227 and 99–1703

STIPULATION

The parties hereby enter into the following stipulation for the purpose of present-ing this case to the Circuit Court for a determination of guilt or acquittal based on stipulated facts and to set forth their additional related agreements as follows:

1. The parties stipulate that the Circuit Court may enter a finding of guilt or acquittal as to Count 1 of the Indictment dated January 28, 1999 and Count 4 of the Indictment dated May 27, 1999 only based on the law and the stipulated facts set forth herein;

2. The parties stipulate to the following facts as related to said Counts:

A. Defendant received indigent burial assistance payment from Pennington County for said funerals in the amount of;

Leonesio funeral $950.00;

Horned Antelope funeral $950.00.

B. Defendant submitted bills for payment to Pennington County, copies of which are attached as Exhibits A and B;

C. Defendant submitted a funeral statement to Leonesio and Horned Antelope for monies in excess of the county burial payment and received monies over and above said amount which were not paid over to Pennington County, as shown by attached Exhibits C and D.

D. Defendant at the time of the events alleged in said Counts had received a copy of the Pennington County Burial Assistance Guidelines, attached Exhibit E;

E. The stipulation attached as Exhibit F regarding the Pennington County Indigent Burial Guidelines is true and correct and is incorporated herein as part of the factual showing before the Court;

F. At no time did Pennington County have a written contract with Campbell Paula Quinn Funeral Home.

3. In the event of a finding by the Court on an issue of law appealable as a

matter of right by the State which would result in a judgment of acquittal, the State shall be afforded an opportunity to request a stay for the purposes of appeal prior to the entry of a judgment of acquittal;

4.   Upon presentation of this signed Stipulation to the Court, Defendant agrees to pay to the State the sum of $21,610.61 as restitution which sum is paid without admission of guilt and which sum will not be refunded regardless of whether the case ultimately ends up as a conviction or acquittal;

5.   That upon the presentation of this executed Stipulation to the Court, the State shall at the same time dismiss with prejudice all of the remaining Counts of the Indictments and agrees not to bring any similar or like charges against Defendant arising out of any indigent burial up to and including the date of Stipulation;

Dated this  9  day of November, 1999.

STATE OF SOUTH DAKOTA
BY:/s/Timothy Barlett
Timothy Barlett
Asst. Attorney General

CARSON J. QUINN

BY:/s/Edward C. Carpenter
Edward C. Carpenter and
Ronald W. Banks
Attorneys for Carson J. Quinn