2002 SD 88

**HEINE FARMS, A Partnership, Gary Heine, Ronald Heine, Gene Heine, Thomas Heine, and Steven Heine, Appellees,**

v.

**YANKTON COUNTY, South Dakota, By and Through its COUNTY COMMISSIONERS, Appellant.**

No. 22055.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided July 24, 2002.

William J. Klimisch, Yankton, for appellees.

Robert Chavis, Yankton County States Attorney, Yankton, James G. Abourezk of Abourezk Law Offices, Sioux Falls, for appellant.

AMUNDSON, Justice.

[¶ 1.] Yankton County appeals a trial court judgment declaring an initiated zoning ordinance illegal and unenforceable and enjoining enforcement of the ordinance. We affirm.

## FACTS

[¶ 2.] Heine Farms (Heine) is a partnership made up of five brothers who are residents, landowners and taxpayers in Yankton County. In late 2000, Heine purchased land in Yankton County with plans to establish a large cattle feedlot on the property. Heine contemplated feeding as many as 20,000 cattle in its operation.

[¶ 3.] As Heine's plans were made known to the public, those opposed to the feedlot circulated an initiative petition to adopt a zoning ordinance that would effectively prevent Heine from operating its planned feedlot. In pertinent part, the ordinance provided specifications for waste management systems but, fatal to the Heine operation, it prohibited a waste management system for more than 7,500 animal units.

[¶ 4.] The initiative petition was filed with the Yankton County Auditor on January 24, 2001. On January 31, the Auditor verified that there were sufficient signatures on the petition to support its submission for a public vote. On the same date, the Yankton County State's Attorney opined that the petition was sufficient as to form and content to support its submission for a public vote. On February 2, Heine commenced the present action for a declaratory judgment that the initiated zoning ordinance was invalid and for an injunction prohibiting its enforcement. Heine also sought a temporary injunction to prohibit Yankton County from adopting the ordinance and from submitting it for a public vote. The County answered and moved to dismiss Heine's complaint. A hearing was held on February 5 and Heine's request for a temporary injunction was denied. Thus, on February 6, the Yankton County Commissioners adopted the proposed ordinance and set it for a county-wide vote on March 20.

[¶ 5.] A court trial on Heine's action against the County was held on March 15. Immediately before trial, the County renewed its motion to dismiss and argued in the alternative for summary judgment on the basis that Heine's exclusive remedy was an appeal of the County Commission's action submitting the initiated ordinance for a public vote.[1] The trial court reserved ruling on Heine's motions and the trial proceeded.

[¶ 6.] On March 20, the Yankton County voters adopted the initiated ordinance by a vote of 3,790 to 1,714.[2] On April 9, the trial court issued a memorandum decision denying the County's motions to dismiss and/or for summary judgment. Findings of fact, conclusions of law and a formal order of denial were entered on May 4. On June 13, the trial court entered a memorandum decision holding the initiated ordinance illegal and unenforceable and enjoining Yankton County from

---

1. Consistent with the rules on conversion of a motion to dismiss to a motion for summary judgment, the trial court afforded counsel for Heine an opportunity to submit any supplemental briefs and affidavits necessary to respond to a motion for summary judgment. *See Eide v. E.I. Du Pont De Nemours & Co.*, 1996 SD 11, ¶ 5, 542 N.W.2d 769, 770 (if court intends to treat motion to dismiss as one for summary judgment, it must advise parties of such intent and provide them with reasonable opportunity to present all material pertinent to such motion).

2. On the request and agreement of the parties, the trial court took judicial notice of the outcome of the vote on the initiated ordinance.

enforcing it. Conforming findings, conclusions and a formal judgment were entered on June 26. Yankton County appeals.

### ISSUE ONE

**[¶ 7.] Did the trial court err in denying Yankton County's motion to dismiss/motion for summary judgment?**

█ [¶ 8.] Whether the trial court's ruling on Yankton County's pretrial motions is reviewed as a denial of a motion to dismiss or as a denial of a motion for summary judgment, the standards are the same. As recently indicated in *Hagemann v. NJS Engineering, Inc.*, 2001 SD 102, ¶ 4, 632 N.W.2d 840, 842:

> This Court's standard of review of a trial court's grant or denial of a motion to dismiss is the same standard as that which is applied upon review of a motion [for] summary judgment—"is the pleader entitled to judgment as a matter of law?" Therefore, we review all facts most [favorably] to the [nonmoving] party. We continue to review questions of law, particularly issues of statutory construction, de novo. (citations omitted).

█ [¶ 9.] Yankton County argues that the trial court erred in denying its motion to dismiss or for summary judgment because an appeal of the County Commission's action submitting the initiated ordinance for a public vote was Heine's exclusive statutory remedy. In support of its argument, Yankton County relies principally upon SDCL 7-8-27 and 7-8-32 and this Court's decisions in *Wold v. Lawrence County Com'n*, 465 N.W.2d 622 (S.D.1991), *Weger v. Pennington County*, 534 N.W.2d 854 (S.D.1995) and *Ridley v. Lawrence County Com'n*, 2000 SD 143, 619 N.W.2d 254.

[¶ 10.] *Wold* summarizes the rules that make a circuit court appeal the exclusive remedy for a person aggrieved by a county commission decision:

> Persons aggrieved of a decision of a board of county commissioners are entitled to appeal that decision pursuant to SDCL 7-8-27. The procedures for all such appeals are detailed in SDCL 7-8-27 through SDCL 7-8-31, inclusive. In 1983, the legislature added SDCL 7-8-32:
>
> > Appeal to the circuit court from decisions of the board of county commissioners, as provided in this chapter, is an *exclusive remedy*. Judicial review of county commission action shall be allowed only as provided in §§ 7-8-27, 7-8-28, 7-8-29, 7-8-30 and 7-8-31.
> >
> > SD SessL ch 44, § 7 (emphasis added).
>
> The plain language of the statute clearly establishes that individuals dissatisfied with county commission decisions can only seek relief by direct appeal of that decision to the circuit court.

*Wold*, 465 N.W.2d at 624 (emphasis original). Based upon the foregoing principles, this Court held in *Wold* that the trial court erred in failing to dismiss a declaratory judgment action challenging a commission decision because the action was an impermissible collateral attack on the decision. Similarly, in *Weger*, this Court upheld the trial court's dismissal of a declaratory judgment action challenging a commission decision because the action would violate the exclusive appeal remedies provided in SDCL ch 7-8. More recently, in *Ridley*, this Court upheld the circuit court's dismissal of a petition for a writ of certiorari challenging a commission decision by adhering to the rule that a circuit court appeal is the sole avenue for relief from a decision of a board of county commissioners.

[¶ 11.] It is notable that in each of the foregoing cases relied upon by Yankton County, it was a *decision* of a county commission that was being challenged. In

*Wold,* the decision was a waiver of certain zoning requirements. In *Weger,* the decision concerned personnel appointments to a county air quality board. In *Ridley,* the decision was the grant of a rezoning request. That only the *decisions* of a county commission are subject to a circuit court appeal is made clear by the plain language of SDCL 7-8-27 which provides in part: "[f]rom all *decisions* of the board of county commissioners upon matters properly before it, there may be an appeal to the circuit court by any person aggrieved[.]" (emphasis added). *Weger,* strongly relied upon by Yankton County, makes reference to the type of commission decision that constitutes an appealable decision under SDCL ch 7-8. As noted in *Weger:*

> In *Codington County v. Board of Commissioners,* 51 S.D. 131, 212 N.W. 626 (1927), we held the word "decision" in the predecessor statute to SDCL 7-8-27 and 7-8-28 means a determination quasi-judicial in nature and *it is only from a quasi-judicial determination that an appeal will lie.* We do not reach the issue [of] whether Pennington County's action in appointing board members is *quasi-judicial or administrative in nature* since the issue has not been briefed and argued.

*Weger,* 534 N.W.2d at 857 n1 (some citations omitted). The definition of an appealable commission decision was explored in greater detail in the *Codington County* case cited above. Quoting with approval from *Fulkerson v. Stevens,* 31 Kan. 125, 1 P. 261 (1883), this Court observed:

> [W]hat are the limitations upon the privilege of persons to take appeals from the decisions of the board of county commissioners? The district court is simply a court, and exercises only judicial power; hence we would suppose that appeals from the board of county commissioners to the district court must be limited to such cases as *require the exercise of purely judicial powers;* and therefore

that when the board of county commissioners exercises political power or legislative power, or administrative power, or discretionary power, *or purely ministerial power,* no appeal will lie.

*Codington County,* 51 S.D. at 134, 212 N.W. at 627 (emphasis added).

[¶ 12.] "Ministerial power" was defined in *First Nat. Bank v. Hirning,* 48 S.D. 417, 421, 204 N.W. 901, 903 as follows:

> When the law requires a public officer to do a specified act in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act, and with no power to exercise discretion, the duty is ministerial, and may be controlled by mandamus. (quoting *Farmers' Loan and Trust Bank v. Hirning,* 42 S.D. 52, 172 N.W. 931(19)).

Applying the concept of ministerial power in a more recent case, this Court held in *Willoughby v. Grim,* 1998 SD 68, ¶ 9, 581 N.W.2d 165, 168, that a township's duty to maintain its roads is ministerial. In reaching its holding, this Court observed:

> [T]he words "shall" and "all" in SDCL 31-13-1, indicate the Legislature intended to create a compulsory obligation to repair and maintain all township roads. "[T]he term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed." Therefore, the duty to maintain township roads is ministerial and [a] proper subject for mandamus when a township fails or refuses to act according to statute. (citations omitted).

[¶ 13.] Like the statute under consideration in *Willoughby,* the statute defining a county commission's duty with regard to an initiative petition uses compulsory language. It provides in pertinent part:

> When a petition to initiate is filed with the auditor, he shall present it to the board of county commissioners at its next regular or special meeting. The

board *shall* enact the proposed ordinance or resolution and *shall* submit it to a vote of the voters in the manner prescribed for a referendum within sixty days after the final enactment.

SDCL 7–18A–13 (emphasis added). Just as with the statute considered in *Willoughby*, the word "shall" in this statute indicates a legislative intent to create a compulsory obligation. Here, the compulsory obligation is to enact an initiated ordinance and to submit it for a public vote. The statute confers no discretion on the commission in carrying out this action. Therefore, the duty or power to enact and submit the ordinance is purely ministerial. Under the settled law previously discussed, no appeal lies from a purely ministerial act of a county commission. It follows that an appeal was not a remedy, let alone an exclusive remedy, for Heine in this case. Thus, the trial court did not err in denying Yankton County's motion to dismiss or motion for summary judgment on the basis of the exclusivity of the remedy of appeal.

### ISSUE TWO

■ [¶ 14.] **Did the trial court err in holding Yankton County's initiated zoning ordinance is illegal and unenforceable?**

[¶ 15.] The trial court held a comprehensive plan for the county is a necessary predicate for enactment of a zoning ordinance. Finding that Yankton County has no such plan, the trial court further held that the County's initiated zoning ordinance was illegal and unenforceable. Arguing that no restriction applicable to the right of initiative makes a comprehensive plan a necessary predicate for an *initiated* zoning ordinance, Yankton County contends that the trial court erred in its holding.

■ [¶ 16.] Throughout its extensive discussion of the right of initiative, the County completely ignores a basic limitation on that right. As this Court held in *Custer City v. Robinson*, 79 S.D. 91, 93, 108 N.W.2d 211, 212 (1961): "It is fundamental that an ordinance or resolution proposed by the electors of a municipality under the initiative law must be within the power of the municipality to enact or adopt." Although this holding was reached in the context of initiated municipal ordinances, the principle is equally applicable to initiated county ordinances. *See* 20 CJS *Counties* § 89 (1990)(the only initiated legislation that may be submitted to the voters is legislation that the county board has jurisdiction and power to enact).

■ [¶ 17.] A county commission has only those powers as are expressly conferred upon it by statute and such as may be reasonably implied from the powers expressly granted. *See State v. Quinn*, 2001 SD 25, ¶ 10, 623 N.W.2d 36, 38 (county has only such powers as are expressly conferred by statute and those reasonably implied from the powers expressly granted). Here, the statutory grant of power for county commissions to adopt zoning ordinances is contained in SDCL 11–2–13:

For the purpose of promoting health, safety, or the general welfare of the county the board may adopt a *zoning ordinance* to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of the yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, flood plain, or other purposes. (emphasis added).

The term "zoning ordinance" is defined in SDCL–11–2–1(10) as, "any ordinance adopted by the board *to implement the comprehensive plan* by regulating the location and use of buildings and uses of

land." (emphasis added).[3] In this instance, it is undisputed that Yankton County had no "comprehensive plan" as described by SDCL 11–2–1(10).[4] Therefore, as reasoned by the trial court, it was impossible for the Yankton County Commission to adopt an ordinance "implement[ing][a] comprehensive plan" that did not exist.

[¶ 18.] A "comprehensive plan" is a document which:

> describes in words, and may illustrate by maps, plats, charts, and other descriptive matter; the goals, policies, and objectives of the board to interrelate all functional and natural systems and activities relating to the development of the territory under its jurisdiction[.]

SDCL 11–2–1(3). Obviously, the Yankton County Commission could not enact a zoning ordinance implementing the goals, policies and objectives of a comprehensive plan for the development of the County if there was no comprehensive plan setting forth those goals, policies and objectives. If the Yankton County Commission could not adopt such an ordinance, neither could the residents of Yankton County through their right of initiative. *Custer City, supra.*[5] Thus, the trial court correctly determined the ordinance adopted by initiative was invalid and unenforceable.

[¶ 19.] Affirmed.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶ 21.] GORS, Acting Justice, dissents.

[¶ 22.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

GORS, Acting Justice (dissenting).

[¶ 23.] I respectfully dissent. South Dakota is the cradle of the initiative and referendum, becoming the first state to give legislative power to its citizens in

---

3. Statutes mandating preparation of comprehensive zoning plans by the counties were passed as early as in 1967. *See* 1967 SDSessL ch 20, § 2. Preparation of the plans was not made completely discretionary for almost ten years. *See* 1977 SDSessL ch 104, § 1.

4. A large part of the trial court's memorandum decision was devoted to the question of whether some preliminary efforts to implement a "comprehensive plan" in Yankton County in the early 1990's constituted a "comprehensive plan" as defined by law. The trial court's findings reflect that these preliminary efforts were not completed and were ultimately thwarted by a referendum rejecting some proposed ordinances in 1993. The trial court determined these preliminary efforts did not constitute a comprehensive plan and Yankton County raises no argument to the contrary. Its rendition of the facts in its brief states that, "by the year 2001, Yankton County had in effect *neither a comprehensive plan* nor a zoning ordinance." (emphasis added). In the argument portion of its brief, Yankton County defines the issue as, "wheth-

er or not the voters ... can, by Initiative, enact a zoning ordinance to limit the size of feedlots ... when the County has neither a comprehensive plan nor a general zoning ordinance, *as is the case in Yankton County.*" (emphasis added). Thus, it is clear that there is no appellate dispute between the parties over the fact that Yankton County did not have a "comprehensive plan" as that term is used in SDCL 11–2–1(10).

5. In reaching this result, we do no violence to the rights of initiative and referendum. The dissent acknowledges there are limitations on these rights and that they are, "curbed ... by the South Dakota Constitution and statutes." Yet, it would ignore these limitations by permitting the Yankton County electorate to accomplish by initiative what its elected county commission could not accomplish directly, the enactment of an ad hoc zoning ordinance in the absence of a comprehensive zoning plan for the county. Such a result would run afoul of the principle that initiated legislation must be within the jurisdiction and power of a county board to enact. *See* 20 CJS *Counties* § 89 (1990); *Custer City, supra.*

1898. *Christensen v. Carson,* 533 N.W.2d 712, 714 (S.D.1995). The Legislature has extended the initiative and referendum to counties, SDCL 7–18A–9, and municipalities, SDCL 9–20. The people's power to initiate legislation is plenary, curbed only by the South Dakota Constitution and statutes. *Byre v. City of Chamberlain,* 362 N.W.2d 69, 79 (S.D.1985). Zoning and rezoning are legislative acts.

*Taylor Properties, Inc. v. Union County,* 1998 SD 90, ¶ 18, 583 N.W.2d 638, 642. Here, the majority allows the county commission's failure to adopt a comprehensive plan to trump the clearly expressed will of the people. In *Vitek v. Bon Homme County,* 2002 SD 45, ¶¶ 10–12, 644 N.W.2d 231, 234–35, we noted that *Taylor* stands for the proposition that citizen legislation on zoning is a traditional right of the voters to override the view of their elected representatives as to what serves the public interest and to legislate on the subject for themselves. In the absence of action by the county commission, the people of Yankton County have spoken and should not only be heard but heeded as well.