GILBERTSON, Chief Justice
(dissenting).
[¶ 30.] I respectfully dissent. Twelve jurors were charged with determining whether Morse was guilty of grand theft by deception in violation of SDCL 22-30A-3(1) and SDCL 22-30A-3(3). They concluded that this was not a mere civil dispute between an over-expectant home owner and an under-achieving contractor. They concluded it was a crime. In so doing, they found that Morse had the specific intent to defraud.
[¶ 31.] This Court does not retry cases de novo. Instead, we review the evidence in the light most favorable to the jury’s verdict. State v. Tofani, 2006 SD 63, ¶ 35, 719 N.W.2d 391, 400. In a similar theft by *924 deception case, we set forth our standard of review:
This case turns on this factual determination. “Where conflicting evidence is present, as in this case, and the credibility of witnesses is in issue, then it is a question of fact for the jury. The jury is physically present at the trial and, therefore, in the best position to judge the demeanor and credibility of the witnesses.” State v. Shank, 88 S.D. 645, 226 N.W.2d 384, 387 (1975).
State v. Hurst, 507 N.W.2d 918, 921 (S.D. 1993). This standard of review is vitally important in a theft by deception case, because rarely, if ever, will a defendant get on the stand and announce that he or she had the specific intent to defraud. “ ‘The proof of fraudulent intent need not be direct; it may be inferred from expressly proven acts of the accused and surrounding circumstances.”’ People ex rel. BJT, 2005 SD 123, ¶10, 707 N.W.2d 489, 492 (quoting State v. Teutsch, 80 S.D. 462, 466, 126 N.W.2d 112, 115 (1964)). Thus, it falls upon the jury to judge the credibility of the State’s evidence and witnesses and any brought forth by the defendant.
[¶ 32.] If Morse had just extolled the general virtues of his abilities as a plumber this could be excused as advertising or puffing. He, however, did far more. He made specific factual representations to induce the Heffrons to hire him. He told the Heffrons that his work would be above and beyond code. While there is a lot of gray in claiming to be a “good” plumber, or even some in repeatedly telling the victim the job will be “easy, quick, cheap,” the same cannot be said for a claim that the work will be above and beyond code. It is either above and beyond code or it is not. The accuracy of such a claim can be empirically determined by reference to the plumbing code. Here it is undisputed that Morse’s work did not meet code, and this Court concedes it “had no value to the home.”[5]
[¶ 33.] To also “close the deal” Morse further assured the Heffrons that his work was so good that the local plumbing inspector did not inspect his work. Once again, this is not puffing. Whether the local plumbing inspector passed his work without inspection because of Morse’s self-proclaimed expertise is easily ascertainable. This was obviously another misstatement of fact Morse made in order to get the job. In his brief Morse does not even attempt to claim this statement was truthful.
[¶ 34.] Moreover, there was no negotiation between equals. Like many homeowners, Heffrons had minimal knowledge in the plumbing field. Specifically, the Heffrons did not feel they possessed sufficient knowledge about plumbing to question Morse’s self-professed plumbing skills.
[¶ 35.] The statements were made by Morse to “create ... a false impression ... including false impressions as to ... [the] value” of his services. SDCL 22-30A-3(1). Thus, he was not convicted for doing substandard work or not completing the job. Rather, his statements brought him within the scope of SDCL 22-30A-3. He created false impressions to get the job. The fact he received between $6,000 and $6,500 for his “services” makes it a matter of “pecuniary significance” required by SDCL 22-30A-3.[6]
*925 [¶ 36.] Morse’s “acts ... and surrounding circumstances” when he got an agreement from the Heffrons, are relevant to a determination of the issue of fraudulent intent. 2005 SD 123 at ¶ 10, 707 N.W.2d at 492. While the following acts do not directly constitute a fraudulent inducement or occurred too late in the relationship to be a fraud to induce Heffrons into hiring him, they strongly bolster the jury’s conclusion that Morse’s original statements were made with fraudulent intent. They include:
(1) Janice Heffron did not seek Morse out to do the job. He repeatedly hounded her about getting the job to the point she described it as “almost being stalked.”
(2) He demanded to be paid in cash to defraud the Internal Revenue Service;
(3) He refused to sign a written contract and only wanted an oral agreement;
(4) He lied about obtaining a building permit;
(5) He purchased items at Menards on the Heffrons’ credit card without their permission;
(6) He failed to produce receipts for his project purchases despite the repeated requests of the Heffrons to do so;
(7) He lied about the reasons he could not get the tankless water heater installed and why the pipes were leaking;
(8) He returned the water heater to Menards and did not give the $186 refund to the Heffrons;
(9)He quit working on the project prematurely and without notice or explanation; and,
(10)He never responded to the Hef-frons’ attempts to contact him after he failed to return to work.
[¶ 37.] We need not depart this jurisdiction as does the Court, for interpretative case law concerning the State’s burden of proof to establish a specific intent to defraud to secure a conviction under SDCL 22-30A-3. In State v. Klein, 444 N.W.2d 16, 19 (S.D.1989) we upheld the conviction of a defendant who overstated the value of his personal property to obtain payment upon an insurance policy. What difference is there between fraudulently obtaining money by one saying he owns destroyed property which he does not, or by saying he is such a good plumber that his work is above code and does not need inspection?
[¶ 38.] The same defense Morse raises was rejected by this Court in Hurst, 507 N.W.2d 918. There the defendants contracted to incinerate medical waste. Instead, they simply buried it. Their defense was their actions did not constitute fraud by deception, but were merely a breach of contract. We interpreted SDCL 22-30A-3 to require, “[i]t is only where the actor did not believe what he purposely caused his victim to believe, and where this can be proved beyond a reasonable doubt, that the actor can be convicted of theft.” Hurst, 507 N.W.2d at 920 (quoting Model Penal Code § 223.3 cmt.3(b)). Did Morse truly believe that his plumbing work was above code and was so good that the plumbing inspector did not bother to inspect it? The jury had a significant amount of evidence to conclude he did not. In upholding the jury’s verdict in Hurst, *926 we concluded, “[e]learly, this failure to incinerate the waste was more than breach of contract. Defendants had the purpose to deceive.” Id. at 921. We also concluded that “ ‘[i]t is a false pretense where a man represents himself to be in a situation or business in which he is not.’ ” Id. (quoting Kansas v. Handke, 185 Kan. 38, 840 P.2d 877, 883 (1959)).
[¶ 39.] In State v. Phair, 2004 SD 88, 684 N.W.2d 660, Phair was convicted of theft by deception for failing to tell a lender that the title to her auto had an unregistered lien upon it, thus allowing her to get a loan on the vehicle. Phair challenged the sufficiency of the evidence by arguing that she had no specific intent to defraud in the loan transaction. She claimed that she truthfully answered all questions put to her by the lender and it was not her fault that the lender failed to ascertain that an unrecorded lien existed. We affirmed holding that there was sufficient evidence for the jury to conclude she intentionally misrepresented the lien status of the vehicle. If failing to inform a party “I have a lien on my car” is felony deception, so, too, is telling a party “my plumbing is above code and so good the plumbing inspector does not even inspect it.”
[¶ 40.] Most recently in State v. Swalve, 2005 SD 17, 692 N.W.2d 794 the defendant was charged with selling cars without disclosing to the purchaser they had liens against them and charging customers for extended warranties which he did not provide. He claimed he was enti-tied to an acquittal because there was insufficient proof to establish he possessed the specific intent to defraud. SpecificaEy Swalve tried to blame the acts upon his sales staff. Here, Morse worked alone and had no one but himself to blame his acts upon. In Swalve we affirmed after applying the appropriate standard of review that a jury’s verdict will not be set aside “if the state’s evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt.” Swalve, 2005 SD 17 at ¶5, 692 N.W.2d at 797.
[¶ 41.] Thus, this Court should review the requirements of SDCL 22-30A-3(1) and 22-30A-3(3) by applying our own interpretative ease law. Moreover, such specific affirmative misrepresentations to obtain a financial benefit are conspicuously missing from the out-of-jurisdiction cases cited by this Court upon which it relies in reversing Morse’s criminal conviction.[7]
[¶ 42.] When researching this Court’s opinions concerning the sufficiency of the evidence for convictions pursuant to SDCL 22-30A-3 there is a consistent deference to the determination of the jury because determinations of fraudulent intent are, by their nature, “factual,” Hurst, 507 N.W.2d at 921, and “circumstantial.” B.J.T., 2005 SD 123 at ¶ 10, 707 N.W.2d at 492. That deference has, until today, been given in similar factual determinations.[8]
[¶ 43.] This case also involves a factual and circumstantial determination. This *927 Court fails to adequately articulate why the deference of all the previous cases does not apply here and why it is taking a new appellate direction.[9] An examination of its opinion shows that it gives the defendant the benefit of the factual doubt rather than applying our accepted standard of review which states that all of the evidence is supposed to be considered in the light most favorable to the jury’s verdict. Tofa-ni, 2006 SD 63 at ¶ 35, 719 N.W.2d at 400.
[¶ 44.] For these reasons, I respectfully dissent.

. In his brief Morse admits "[t]here is no dispute that some of the plumbing did not meet the rigors of the plumbing code.” Those "rigors” identified by State Plumbing Inspector Gerald Johnson included no plumbing certificate, improper bathroom venting, no water heater expansion tank, and, no relief valve on the water heater.

. Lest there be any confusion as to whether the Heffrons received anything of value for *925 their investment, one expert witness testified that Morse’s "plumbing” did not have any value and another testified that Morse’s "work" actually constituted a detriment to the value of the home.

. In State v. Fyffe, 67 Ohio App.3d 608, 588 N.E.2d 137, 142 (1990) the defendant only told the property owners he would give them a “deal." In Klink v. Commonwealth, 12 Va. App. 815, 407 S.E.2d 5, 8 (1991) "[t]here was no evidence of any false statements made to induce the homeowner to enter into the contract.’’ In State v. Tovar, 580 N.W.2d 768 (Iowa 1998) the court concluded there was no evidence defendant told homeowners he would use their down payments to purchase carpeting. In Smith v. State, 665 So.2d 1002 (Ala.Cr.App.1995) the defendant promised to produce t-shirts and failed to do so.

. State v. Quinn, 2001 SD 25, 623 N.W.2d 36, was a trial to the court based upon stipulated facts.

. Nor were our decisions controversial. Klein, Hurst, Phair and Swalve are without dissent.